# LEWIS *v.* UNITED STATES

No. 78–1595.   Argued January 7, 1980—Decided February 27, 1980

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, REHNQUIST, and STEVENS, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and POWELL, JJ., joined, *post*, p. 68.

*Andrew W. Wood* argued the cause for petitioner. With him on the briefs was *Neal P. Rutledge.*

*Andrew J. Levander* argued the cause *pro hac vice* for the United States. With him on the brief were *Solicitor General McCree, Assistant Attorney General Heymann, Deputy Solicitor General Frey, Jerome M. Feit,* and *Joel M. Gershowitz.*

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents the question whether a defendant's extant prior conviction, flawed because he was without counsel, as required by *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), may constitute the predicate for a subsequent conviction under § 1202 (a)(1), as amended, of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U. S. C. App. § 1202 (a)(1).[1]

## I

In 1961, petitioner George Calvin Lewis, Jr., upon his plea of guilty, was convicted in a Florida state court of a felony

---

[1] Section 1202 (a) reads in full:

"Any person who—

"(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

"(2) has been discharged from the Armed Forces under dishonorable conditions, or

"(3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or

"(4) having been a citizen of the United States has renounced his citizenship, or

"(5) being an alien is illegally or unlawfully in the United States,

"and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

for breaking and entering with intent to commit a misdemeanor. See Fla. Stat. § 810.05 (1961). He served a term of imprisonment. That conviction has never been overturned, nor has petitioner ever received a qualifying pardon or permission from the Secretary of the Treasury to possess a firearm. See 18 U. S. C. App. § 1203 (2) and 18 U. S. C. § 925 (c).

In January 1977, Lewis, on probable cause, was arrested in Virginia, and later was charged by indictment with having knowingly received and possessed at that time a specified firearm, in violation of 18 U. S. C. App. § 1202 (a)(1).[2] He waived a jury and was given a bench trial. It was stipulated that the weapon in question had been shipped in interstate commerce. The Government introduced in evidence an exemplified copy of the judgment and sentence in the 1961 Florida felony proceeding. App. 10.

Shortly before the trial, petitioner's counsel informed the court that he had been advised that Lewis was not represented by counsel in the 1961 Florida proceeding.[3] He claimed that under *Gideon* v. *Wainwright, supra,* a violation of § 1202

---

[2] The indictment also charged petitioner with a violation of 18 U. S. C. § 922 (h)(1). That statute reads in pertinent part:

"It shall be unlawful for any person—

"(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

.    .    .    .    .

"to receive any firearm . . . which has been shipped or transported in interstate . . . commerce."

Petitioner was acquitted on the § 922 (h)(1) charge and it is not before us here.

[3] Petitioner's counsel stated that a Florida attorney had advised him that the court records in that State showed affirmatively that Lewis had no lawyer. He noted also that Lewis had been charged with the same offense as had the defendant in *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), and that petitioner had been tried in the same State about six months before Gideon was tried. App. 2–3.

(a)(1) could not be predicated on a prior conviction obtained in violation of petitioner's Sixth and Fourteenth Amendment rights. The court rejected that claim, ruling that the constitutionality of the outstanding Florida conviction was immaterial with respect to petitioner's status under § 1202 (a)(1) as a previously convicted felon at the time of his arrest. Petitioner, accordingly, offered no evidence as to whether in fact he had been convicted in 1961 without the aid of counsel. We therefore assume, for present purposes, that he was without counsel at that time.

On appeal, the United States Court of Appeals for the Fourth Circuit, by a divided vote, affirmed. 591 F. 2d 978 (1979). It held that a defendant, purely as a defense to a prosecution under § 1202 (a)(1), could not attack collaterally an outstanding prior felony conviction, and that the statutory prohibition applied irrespective of whether that prior conviction was subject to collateral attack. The Court of Appeals also rejected Lewis' constitutional argument to the effect that the use of the prior conviction as a predicate for his prosecution under § 1202 (a)(1) violated his rights under the Fifth and Sixth Amendments.

Because of conflict among the Courts of Appeals,[4] we granted certiorari. 442 U. S. 939 (1979).

---

[4] Compare *United States* v. *Lufman,* 457 F. 2d 165 (CA7 1972) (use of an underlying felony conviction unconstitutionally obtained to support a conviction under § 1202 (a)(1) is reversible error), with the Fourth Circuit's ruling in the present case, and with *United States* v. *Maggard,* 573 F. 2d 926 (CA6 1978); and *United States* v. *Graves,* 554 F. 2d 65 (CA3 1977) (en banc) (claim of constitutional error in the underlying conviction may not be raised). The Ninth Circuit has distinguished between a claim of constitutional invalidity in the underlying conviction, which it has held may be raised, and a claim that the underlying conviction has been, or should be, reversed on other grounds. Compare *United States* v. *O'Neal,* 545 F. 2d 85 (1976), and *United States* v. *Pricepaul,* 540 F. 2d 417 (1976), with *United States* v. *Liles,* 432 F. 2d 18 (1970). See also *United States* v. *Herrell,* 588 F. 2d 711 (CA9 1978), cert. denied, 440

## II

Four cases decided by this Court provide the focus for petitioner's attack upon his conviction. The first, and pivotal one, is *Gideon* v. *Wainwright, supra,* where the Court held that a state felony conviction without counsel, and without a valid waiver of counsel, was unconstitutional under the Sixth and Fourteenth Amendments. That ruling is fully retroactive. *Kitchens* v. *Smith,* 401 U. S. 847 (1971).

U. S. 964 (1979) (underlying conviction in a prosecution under 18 U. S. C. § 922 (h) (1) may not be challenged on nonconstitutional grounds).

The identical issue that is presented in this case has also arisen in the context of challenges to convictions under 18 U. S. C. § 922 (g) (1) (proscribing shipping or transport of a firearm in interstate or foreign commerce by a person under indictment for, or convicted of, a felony) and § 922 (h) (1) (proscribing receipt of a firearm shipped in interstate or foreign commerce by such a person). Compare *United States* v. *Scales,* 599 F. 2d 78 (CA5 1979); *Dameron* v. *United States,* 488 F. 2d 724 (CA5 1974); *Pasterchik* v. *United States,* 466 F. 2d 1367 (CA9 1972); and *United States* v. *DuShane,* 435 F. 2d 187 (CA2 1970) (underlying conviction may be attacked as unconstitutional), with *Barker* v. *United States,* 579 F. 2d 1219, 1226 (CA10 1978) (underlying conviction may not be so challenged in prosecution under § 922 (h) (1)).

The Courts of Appeals have treated the issue somewhat differently in prosecutions under 18 U. S. C. § 922 (a) (6) (prohibiting the falsification of one's status as a convicted felon in purchasing a firearm). Nonuniformity has prevailed nonetheless on the question whether a defendant charged with violating that statute may challenge the constitutionality of the underlying felony conviction. Compare *United States* v. *O'Neal, supra,* and *United States* v. *Pricepaul, supra* (permitting the challenge), with *United States* v. *Allen,* 556 F. 2d 720 (CA4 1977); *United States* v. *Graves, supra;* and *Cassity* v. *United States,* 521 F. 2d 1320 (CA6 1975) (holding that the challenge may not be made). The Eighth Circuit has stated that it will not permit a challenge to the constitutionality of the underlying conviction where the defendant is charged under § 922 (a) (6), while reserving the question under § 1202 (a) (1) and §§ 922 (g) (1) and (h) (1). *United States* v. *Edwards,* 568 F. 2d 68, 70–72, and n. 3 (1977). See also *United States* v. *Graves,* 554 F. 2d, at 83–88 (Garth, J., and Seitz, C. J., concurring in part and dissenting in part) (the Government need not prove the validity of the underlying conviction in a prosecution brought under § 922 (a) (6), but it must do so in a prosecution under § 1202 (a) (1)).

The second case is *Burgett* v. *Texas,* 389 U. S. 109 (1967). There the Court held that a conviction invalid under *Gideon* could not be used for enhancement of punishment under a State's recidivist statute. The third is *United States* v. *Tucker,* 404 U. S. 443 (1972), where it was held that such a conviction could not be considered by a court in sentencing a defendant after a subsequent conviction. And the fourth is *Loper* v. *Beto,* 405 U. S. 473 (1972), where the Court disallowed the use of the conviction to impeach the general credibility of the defendant. The prior conviction, the plurality opinion said, "lacked reliability." *Id.,* at 484, quoting *Linkletter* v. *Walker,* 381 U. S. 618, 639, and n. 20 (1965).

We, of course, accept these rulings for purposes of the present case. Petitioner's position, however, is that the four cases require a reversal of his conviction under § 1202 (a)(1) on both statutory and constitutional grounds.

### III

The Court has stated repeatedly of late that in any case concerning the interpretation of a statute the "starting point" must be the language of the statute itself. *Reiter* v. *Sonotone Corp.,* 442 U. S. 330, 337 (1979). See also *Touche Ross & Co.* v. *Redington,* 442 U. S. 560, 568 (1979); *Southeastern Community College* v. *Davis,* 442 U. S. 397, 405 (1979). An examination of § 1202 (a)(1) reveals that its proscription is directed unambiguously at any person who "has been convicted by a court of the United States or of a State . . . of a felony." No modifier is present, and nothing suggests any restriction on the scope of the term "convicted." "Nothing on the face of the statute suggests a congressional intent to limit its coverage to persons [whose convictions are not subject to collateral attack]." *United States* v. *Culbert,* 435 U. S. 371, 373 (1978); see *United States* v. *Naftalin,* 441 U. S. 768, 772 (1979). The statutory language is sweeping, and its plain meaning is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is

relieved of his disability by some affirmative action, such as a qualifying pardon or a consent from the Secretary of the Treasury.[5]  The obvious breadth of the language may well reflect the expansive legislative approach revealed by Congress' express findings and declarations, in 18 U. S. C. App. § 1201,[6] concerning the problem of firearm abuse by felons and certain specifically described persons.

Other provisions of the statute demonstrate and reinforce its broad sweep.  Section 1203 enumerates exceptions to

---

[5] One might argue, of course, that the language is so sweeping that it includes in its proscription even a person whose predicate conviction in the interim had been finally reversed on appeal and thus no longer was outstanding.  The Government, however, does not go so far, Tr. of Oral Arg. 29–30, 37–40, and though we have no need to pursue that extreme argument in this case, we reject it.  We are not persuaded that the mere possibility of making that argument renders the statute, as petitioner suggests, unconstitutionally vague.  And unlike the dissent, *post*, at 69, we view the language Congress chose as consistent with the common-sense notion that a disability based upon one's status as a convicted felon should cease only when the conviction upon which that status depends has been vacated.

We note, nonetheless, that the disability effected by § 1202 (a)(1) would apply while a felony conviction was pending on appeal.  See Note, Prior Convictions and the Gun Control Act of 1968, 76 Colum. L. Rev. 326, 334, and n. 42 (1976).

[6] "The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons, veterans who are discharged under dishonorable conditions, mental incompetents, aliens who are illegally in the country, and former citizens who have renounced their citizenship, constitutes— .

"(1) a burden on commerce or threat affecting the free flow of commerce,

"(2) a threat to the safety of the President of the United States and Vice President of the United States,

"(3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

"(4) a threat to the continued and effective operation of the Government of the United States and of the government of each State guaranteed by article IV of the Constitution."

§ 1202 (a)(1) (a prison inmate who by reason of his duties has expressly been entrusted with a firearm by prison authority; a person who has been pardoned and who has expressly been authorized to receive, possess, or transport a firearm). In addition, § 1202 (c)(2) defines "felony" to exclude certain state crimes punishable by no more than two years' imprisonment. No exception, however, is made for a person whose outstanding felony conviction ultimately might turn out to be invalid for any reason. On its face, therefore, § 1202 (a)(1) contains nothing by way of restrictive language. It thus stands in contrast with other federal statutes that explicitly permit a defendant to challenge, by way of defense, the validity or constitutionality of the predicate felony. See, *e. g.,* 18 U. S. C. § 3575 (e) (dangerous special offender) and 21 U. S. C. § 851 (c)(2) (recidivism under the Comprehensive Drug Abuse Prevention and Control Act of 1970).

When we turn to the legislative history of § 1202 (a)(1), we find nothing to suggest that Congress was willing to allow a defendant to question the validity of his prior conviction as a defense to a charge under § 1202 (a)(1). The section was enacted as part of Title VII of the Omnibus Crime Control and Safe Streets Acts of 1968, 82 Stat. 236. It was added by way of a floor amendment to the Act and thus was not a subject of discussion in the legislative reports. See *United States* v. *Batchelder,* 442 U. S. 114, 120 (1979); *Scarborough* v. *United States,* 431 U. S. 563, 569–570 (1977); *United States* v. *Bass,* 404 U. S. 336, 344, and n. 11 (1971). What little legislative history there is that is relevant reflects an intent to impose a firearms disability on any felon based on the fact of conviction. Senator Long, who introduced and directed the passage of Title VII, repeatedly stressed *conviction,* not a "valid" conviction, and not a conviction not subject to constitutional challenge, as the criterion. For example, the Senator observed:

"So, under Title VII, every citizen could possess a gun

until the commission of his first felony. Upon his conviction, however, Title VII would deny every assassin, murderer, thief and burglar of the right to possess a firearm in the future except where he has been pardoned by the President or a State Governor and had been expressedly authorized by his pardon to possess a firearm." 114 Cong. Rec. 14773 (1968).

See also *id.,* at 13868, 14774. Inasmuch as Senator Long was the sponsor and floor manager of the bill, his statements are entitled to weight. *Simpson* v. *United States,* 435 U. S. 6, 13 (1978).

It is not without significance, furthermore, that Title VII, as well as Title IV of the Omnibus Act, was enacted in response to the precipitous rise in political assassinations, riots, and other violent crimes involving firearms, that occurred in this country in the 1960's. See, *e. g.,* S. Rep. No. 1097, 90th Cong., 2d Sess., 76–78 (1968); H. R. Rep. No. 1577, 90th Cong., 2d Sess., 7 (1968); S. Rep. No. 1501, 90th Cong., 2d Sess., 22–23 (1968). This Court, accordingly, has observed:

"The legislative history [of Title VII] in its entirety, while brief, further supports the view that Congress sought to rule broadly—to keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" *Scarborough* v. *United States,* 431 U. S., at 572.

The legislative history, therefore, affords no basis for a loophole, by way of a collateral constitutional challenge, to the broad statutory scheme enacted by Congress. Section 1202 (a) was a sweeping prophylaxis, in simple terms, against misuse of firearms. There is no indication of any intent to require the Government to prove the validity of the predicate conviction.

The very structure of the Omnibus Act's Title IV, enacted

64

simultaneously with Title VII, reinforces this conclusion. Each Title prohibits categories of presumptively dangerous persons from transporting or receiving firearms. See 18 U. S. C. §§ 922 (g) and (h). Actually, with regard to the statutory question at issue here, we detect little significant difference between Title IV and Title VII. Each seeks to keep a firearm away from "any person . . . who has been convicted" of a felony, although the definition of "felony" differs somewhat in the respective statutes. But to limit the scope of §§ 922 (g)(1) and (h)(1) to a validly convicted felon would be at odds with the statutory scheme as a whole. Those sections impose a disability not only on a convicted felon but also on a person under a felony indictment, even if that person subsequently is acquitted of the felony charge. Since the fact of mere indictment is a disabling circumstance, *a fortiori* the much more significant fact of conviction must deprive the person of a right to a firearm.

Finally, it is important to note that a convicted felon is not without relief. As has been observed above, the Omnibus Act, in §§ 1203 (2) and 925 (c), states that the disability may be removed by a qualifying pardon or the Secretary's consent. Also, petitioner, before obtaining his firearm, could have challenged his prior conviction in an appropriate proceeding in the Florida state courts. See Fla. Const., Art. 5, § 5 (3); *L'Hommedieu* v. *State*, 362 So. 2d 72 (Fla. App. 1978); *Weir* v. *State*, 319 So. 2d 80 (Fla. App. 1975). See also *United States* v. *Morgan*, 346 U. S. 502 (1954).[7]

It seems fully apparent to us that the existence of these remedies, two of which are expressly contained in the Omnibus Act itself, suggests that Congress clearly intended that the defendant clear his status *before* obtaining a firearm, thereby fulfilling Congress' purpose "broadly to keep firearms away

[7] This being so, § 1202 (a)(1) does not attach "what may amount to lifelong sanctions to a mere finding of probable cause," as has been argued by one commentator. See Comment, 92 Harv. L. Rev. 1790, 1795 (1979).

from the persons Congress classified as potentially irresponsible and dangerous." *Barrett* v. *United States,* 423 U. S. 212, 218 (1976).

With the face of the statute and the legislative history so clear, petitioner's argument that the statute nevertheless should be construed so as to avoid a constitutional issue is inapposite. That course is appropriate only when the statute provides a fair alternative construction. This statute could not be more plain. *Swain* v. *Pressley,* 430 U. S. 372, 378, and n. 11 (1977); *United States* v. *Batchelder,* 442 U. S., at 122–123. Similarly, any principle of lenity, see *Rewis* v. *United States,* 401 U. S. 808, 812 (1971), has no application. The touchstone of that principle is statutory ambiguity. *Huddleston* v. *United States,* 415 U. S. 814, 832 (1974); *United States* v. *Batchelder,* 442 U. S., at 121–122. There is no ambiguity here.

We therefore hold that § 1202 (a)(1) prohibits a felon from possessing a firearm despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds.

## IV

The firearm regulatory scheme at issue here is consonant with the concept of equal protection embodied in the Due Process Clause of the Fifth Amendment if there is "some 'rational basis' for the statutory distinctions made . . . or . . . they 'have some relevance to the purpose for which the classification is made.' " *Marshall* v. *United States,* 414 U. S. 417, 422 (1974), quoting from *McGinnis* v. *Royster,* 410 U. S. 263, 270 (1973), and *Baxstrom* v. *Herold,* 383 U. S. 107, 111 (1966). See *Vance* v. *Bradley,* 440 U. S. 93, 97 (1979).[8]

---

[8] These legislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties. See *United States* v. *Miller,* 307 U. S. 174, 178 (1939) (the Second Amendment guarantees no right to keep and bear a firearm that does not have "some reasonable relationship to the

Section 1202 (a)(1) clearly meets that test. Congress, as its expressed purpose in enacting Title VII reveals, 18 U. S. C. App. § 1201, was concerned that the receipt and possession of a firearm by a felon constitutes a threat, among other things, to the continued and effective operation of the Government of the United States. The legislative history of the gun control laws discloses Congress' worry about the easy availability of firearms, especially to those persons who pose a threat to community peace. And Congress focused on the nexus between violent crime and the possession of a firearm by any person with a criminal record. 114 Cong. Rec. 13220 (1968) (remarks of Sen. Tydings); *id.,* at 16298 (remarks of Rep. Pollock). Congress could rationally conclude that any felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm. See, *e. g., United States* v. *Ransom,* 515 F. 2d 885, 891–892 (CA5 1975), cert. denied, 424 U. S. 944 (1976). This Court has recognized repeatedly that a legislature constitutionally may prohibit a convicted felon from engaging in activities far more fundamental than the possession of a firearm. See *Richardson* v. *Ramirez,* 418 U. S. 24 (1974) (disenfranchisement); *De Veau* v. *Braisted,* 363 U. S. 144 (1960) (proscription against holding office in a waterfront labor organization); *Hawker* v. *New York,* 170 U. S. 189 (1898) (prohibition against the practice of medicine).

We recognize, of course, that under the Sixth Amendment an uncounseled felony conviction cannot be used for certain purposes. See *Burgett, Tucker,* and *Loper,* all *supra.* The Court, however, has never suggested that an uncounseled con-

---

preservation or efficiency of a well regulated militia"); *United States* v. *Three Winchester 30–30 Caliber Lever Action Carbines,* 504 F. 2d 1288, 1290, n. 5 (CA7 1974); *United States* v. *Johnson,* 497 F. 2d 548 (CA4 1974); *Cody* v. *United States,* 460 F. 2d 34 (CA8), cert. denied, 409 U. S. 1010 (1972) (the latter three cases holding, respectively, that § 1202 (a)(1), § 922 (g), and § 922 (a)(6) do not violate the Second Amendment).

viction is invalid for all purposes. See *Scott v. Illinois*, 440 U. S. 367 (1979); *Loper v. Beto*, 405 U. S., at 482, n. 11 (plurality opinion).

Use of an uncounseled felony conviction as the basis for imposing a civil firearms disability, enforceable by a criminal sanction, is not inconsistent with *Burgett, Tucker*, and *Loper.* In each of those cases, this Court found that the subsequent conviction or sentence violated the Sixth Amendment because it depended upon the reliability of a past uncounseled conviction. The federal gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational.[9] Enforcement of that essentially civil disability through a criminal sanction does not "support guilt or enhance punishment," see *Burgett*, 389 U. S., at 115, on the basis of a conviction that is unreliable when one considers Congress' broad purpose. Moreover, unlike the situation in *Burgett*, the sanction imposed by § 1202 (a)(1) attaches immediately upon the defendant's first conviction.

Again, it is important to note that a convicted felon may challenge the validity of a prior conviction, or otherwise remove his disability, before obtaining a firearm. We simply hold today that the firearms prosecution does not open the predicate conviction to a new form of collateral attack. See Note, Prior Convictions and the Gun Control Act of 1968,

---

[9] The dissent's assertion that Congress' judgment in this regard cannot rationally be supported, *post*, at 72, is one we do not share. Moreover, such an assertion seems plainly inconsistent with the deference that a reviewing court should give to a legislative determination that, in essence, predicts a potential for future criminal behavior.

76 Colum. L. Rev. 326, 338–339 (1976).   Cf. *Walker* v. *City of Birmingham,* 388 U. S. 307 (1967).

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

Mr. Justice Brennan, with whom Mr. Justice Marshall and Mr. Justice Powell join, dissenting.

In disagreement with every other Court of Appeals that has addressed the issue,[1] the Court of Appeals for the Fourth Circuit, held, by a divided vote, that an uncounseled and hence unconstitutional felony conviction may form the predicate for conviction under § 1202 (a)(1) of the Omnibus Crime Control and Safe Streets Act of 1968.   Today the Court affirms that judgment, but by an analysis that cannot be squared with either the literal language of the statute or controlling decisions of this Court.   I respectfully dissent.

## I

Two longstanding principles of statutory construction independently mandate reversal of petitioner's conviction.   The first is the precept that "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite."   *United States* v. *Universal C. I. T. Credit Corp.,* 344 U. S. 218, 221–222 (1952).   The Court has repeatedly reaffirmed this "rule of lenity."   See, *e. g., Simpson* v. *United States,* 435 U. S. 6, 14 (1978); *United States* v. *Bass,* 404 U. S. 336, 347–349 (1971); *Rewis* v. *United States,* 401 U. S. 808, 812 (1971); *Ladner* v. *United States,* 358 U. S. 169,

---

[1] See, *e. g., Dameron* v. *United States,* 488 F. 2d 724 (CA5 1974); *United States* v. *Lufman,* 457 F. 2d 165 (CA7 1972); *United States* v. *DuShane,* 435 F. 2d 187 (CA2 1970); *United States* v. *Thoresen,* 428 F. 2d 654 (CA9 1970). See generally Comment, 92 Harv. L. Rev. 1790 (1979).

177 (1958); *Bell* v. *United States,* 349 U. S. 81 (1955). Indeed, the principle that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity" has previously been invoked in interpreting the very provision at issue in this case. See *United States* v. *Bass, supra.*

The Court declines to apply this established rule of construction in this case because, in its view, "[t]here is no ambiguity here." *Ante,* at 65. In light of the gloss the Court places on the literal language of the statute, I find this to be a curious conclusion. By its own terms, § 1202 (a)(1) reaches "[a]ny person *who has been convicted* . . . of a felony." The provision on its face admits of no exception to its sweeping proscription. Yet despite the absence of any qualifying phrase, the Court concedes—as it must—that the statute cannot be interpreted so as to include those persons whose predicate convictions have been vacated or reversed on appeal. *Ante,* at 60–61, and n. 5.

It thus appears that the plain words of § 1202 (a)(1) are not so clear after all, and we therefore must determine the section's reach. Two alternative constructions are offered: The first is the Government's—that § 1202 (a)(1) may be read to permit only *outstanding* felony convictions to serve as the basis for prosecution. Tr. of Oral Arg. 29–30. The second is petitioner's—that the predicate conviction must be not only outstanding, but also constitutionally *valid.* Because either interpretation fairly comports with the statutory language, surely the principle of lenity requires us to resolve any doubts against the harsher alternative and to read the statute to prohibit the possession of firearms only by those who have been *constitutionally* convicted of a felony.

The Court nevertheless adopts the Government's construction, relying on a supposed legislative resolve to enact a sweeping measure against the misuse of firearms. But however expansive § 1202 was meant to be, we are not faithful to "our duty to protect the rights of the individual," *Dalia* v. *United States,* 441 U. S. 238, 263 (1979)( Stevens, J., dis-

senting), when we are so quick to ascribe to Congress the intent to punish the possession of a firearm by a person whose predicate felony conviction was obtained in violation of the right to the assistance of counsel, "one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty." *Johnson* v. *Zerbst*, 304 U. S. 458, 462 (1938). Petitioner has once already been imprisoned in violation of the Constitution. In the absence of any clear congressional expression of its intent, I cannot accept a construction of § 1202 (a)(1) that reflects such an indifference to petitioner's plight and such a derogation of the principles of *Gideon* v. *Wainwright*, 372 U. S. 335 (1963).[2]

---

[2] As the Court has previously observed, § 1202 "was hastily passed, with little discussion, no hearings, and no report." *United States* v. *Bass*, 404 U. S. 336, 344 (1971). "In short, 'the legislative history of [the] Act hardly speaks with that clarity of purpose which Congress supposedly furnishes courts in order to enable them to enforce its true will.'" *Id.*, at 346 (quoting *Universal Camera Corp.* v. *NLRB*, 340 U. S. 474, 483 (1951)). It is thus little wonder that the Court finds no explicit support in the statute's legislative history for petitioner's construction.

Nor do the few signposts that do exist in the history and structure of Title VII point unambiguously to the Court's conclusion. That Congress included provisions within the Omnibus Act whereby a convicted felon could have his disability removed by a qualifying pardon or the Secretary's consent, see §§ 1203 (2) and 925 (c), does not mean that Congress intended them to be exclusive remedies. Indeed, these provisions were clearly designed only to provide a mechanism for those persons with *valid* felony convictions to seek relief from the prohibitions of § 1202.

Similarly, a comparison between the scope of Title IV and Title VII is unenlightening on the question before us. Simply because the former Title imposes a disability on any person under a felony indictment, it by no means follows, *a fortiori* or otherwise, that Congress intended by the latter Title to impose a somewhat harsher disability on those persons with unconstitutional felony convictions. Cf. *ante*, at 64. Significantly, the restrictions attaching to an individual under indictment are necessarily temporary, while those imposed on the basis of a previous conviction are indefinite in duration. Moreover, Congress' failure to include persons "under indictment" within the proscriptions of § 1202 more plausibly signals its desire to demand a greater indication of potential danger-

## II

The second maxim of statutory construction that compels a narrow reading of § 1202 (a)(1) is the "cardinal principle" that "if a serious doubt of constitutionality is raised, . . . this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell* v. *Benson,* 285 U. S. 22, 62 (1932). Accord, *Schneider* v. *Smith,* 390 U. S. 17, 26 (1968); *United States* v. *Rumely,* 345 U. S. 41, 45 (1953); *United States* v. *CIO,* 335 U. S. 106, 120–121, and n. 20 (1948). And doubts as to the constitutionality of a statute that could predicate criminal liability solely on the existence of a previous uncounseled felony conviction are indeed serious, for a trilogy of this Court's decisions would seem to prohibit precisely such a result.

*Burgett* v. *Texas,* 389 U. S. 109 (1967), held that a prior uncounseled felony conviction was void and thus inadmissible in a prosecution under a Texas recidivist statute. *Burgett* stated: "To permit a conviction obtained in violation of *Gideon* v. *Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right." *Id.,* at 115 (citation omitted). *United States* v. *Tucker,* 404 U. S. 443 (1972), and *Loper* v. *Beto,* 405 U. S. 473 (1972), respectively prohibited the use of uncounseled felony convictions as a factor to be considered in sentencing, and to impeach the defendant's credibility.

*Burgett* and its progeny appear to control the result in this case. The clear teaching of those decisions is that an uncoun-

---

ousness than would be provided by the mere fact of indictment—or, for that matter, by an uncounseled felony conviction. In fact, in a slightly different context, Congress has expressly rejected the proposition that an invalid prior conviction is a reliable indicator of "dangerousness." See 18 U. S. C. § 3575 (e) (dangerous special offender).

seled felony conviction can never be used "to support guilt or enhance punishment for another offense." Here, petitioner could not have been tried and convicted for violating § 1202 (a)(1) in the absence of his previous felony conviction. It could not be plainer that his constitutionally void conviction was therefore used "to support guilt" for the current offense. The Court's bald assertion to the contrary is simply inexplicable.

The Court's attempt to distinguish *Burgett, Tucker,* and *Loper* on the ground that the validity of the subsequent convictions or sentences in those cases depended on the *reliability* of the prior uncounseled felony convictions, while in the present case the law focuses on the mere *fact* of the prior conviction, is unconvincing. The fundamental rationale behind those decisions was the concern that according any credibility to an uncounseled felony conviction would seriously erode the protections of the Sixth Amendment. Congress' decision to include convicted felons within the class of persons prohibited from possessing firearms can rationally be supported only if the historical fact of conviction is indeed a reliable indicator of potential dangerousness. As we have so often said, denial of the right to counsel impeaches "the very integrity of the fact-finding process." *Linkletter* v. *Walker,* 381 U. S. 618, 639 (1965). Accord, *Lakeside* v. *Oregon,* 435 U. S. 333, 341 (1978); *Argersinger* v. *Hamlin,* 407 U. S. 25, 31 (1972). And the absence of counsel impairs the reliability of a felony conviction just as much when used to prove potential dangerousness as when used as direct proof of guilt. Cf. *Loper* v. *Beto, supra,* at 483 (opinion of STEWART, J.).

### III

Finally, it is simply irrelevant that petitioner could have challenged the validity of his prior conviction in appropriate proceedings in the state courts. Nor can the existence of such a remedy prohibit him from raising the unconstitutionality of that conviction as a defense to the present charge.

In the first place, neither *Burgett* nor *Loper* imposed any requirement that a defendant collaterally attack his uncounseled conviction *before* he faces prosecution under § 1202 (a)(1); in both cases the Court held the use of the prior invalid convictions impermissible even though the defendants had taken no affirmative steps to have them overturned. More to the point, however, where the very defect in the initial proceedings was that the accused did not have the assistance of counsel in defending the felony charges against him, it simply defies reason and sensibility to suggest that the defendant must be regarded as having waived his defense to the § 1202 (a)(1) prosecution because he failed first to retain counsel to seek an extraordinary writ of *coram nobis.*