**UNITED STATES of America, Plaintiff,**

v.

**Arthur Minkoff CLAWSON, Defendant.**

**No. CR 86–11–PA.**

United States District Court,
D. Oregon.

Sept. 11, 1986.

As Amended Sept. 15, 1986.

Charles H. Turner, U.S. Atty., Frank Noonan, Asst. U.S. Atty., Portland, Or., for plaintiff U.S.

Steven T. Wax, Federal Public Defender, Portland, Or., for defendant Arthur Minkoff Clawson.

PANNER, Chief Judge.

Defendant Arthur Minkoff Clawson was charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C.App. II § 1202(a). The Government sought an enhanced penalty under section 1202(a)'s Armed Career Criminal provision. A jury convicted Clawson, and he received an enhanced sentence of twenty years.

Before trial, Clawson filed several motions, including motions to dismiss and suppress. In oral rulings, I denied each motion. This opinion supplements those rulings.

## FACTS

On November 10, 1985, the Portland police arrested Marie Ellingboe for check forgery. Ellingboe told the police that she had obtained checks and identification from a man named Art and a woman named Kitt. She and they split the proceeds from the forgery. Ellingboe warned that Art always carried a gun, and that Kitt was a "gun freak." She also said that Art drove a brown El Camino, that Kitt drove a blue car, and that the two were staying at the Chumaree Motel on Eighty-Second Avenue in Portland. Ellingboe gave the motel's phone number to the police, who verified it.

Late that night, Detectives Larry Kochever and Carolyn Wooden-Johnson went to the motel. They spoke with the motel clerk, who gave them a pass key. They used it to make a warrantless entry into the suspects' room. Inside, they found evidence of a forgery operation. The Government concedes this entry was illegal, and has not offered evidence gained from it.

Kochever had also observed a brown El Camino in the motel's parking lot, and walked over to look at it. While he stood by the car, a blue car drove into the lot. The car stopped while crossing the sidewalk that separated the street from the lot, backed out, and parked on the street.

Because of the glare from the car's headlights, Kochever did not see who was in it. After the car parked on the street, however, he heard two car doors open and shut.

A woman then approached him, who he later learned was Kathleen Penn, or Kitt. She angrily asked him what he was doing by her car. Kochever made a noncommittal reply.

Kochever was certain at this point that the woman was Kitt, because of the connection between the cars. Penn then walked to the motel, and entered one of three rooms. Though Kochever's view of the doors to these rooms was obstructed, he knew that one of the rooms was the one he had entered earlier.

After the encounter with Penn, Kochever walked to a parking lot across the street, where Wooden-Johnson had parked their car. Soon afterwards, he saw Penn leave the motel and walk to the blue car parked on the street. Penn started the car and pulled it forward ten feet. A man, later determined to be Clawson, stepped out of the bushes near the sidewalk, walked around to the passenger side of the car, and got in.

While Penn and Clawson accomplished this rendezvous, Wooden-Johnson pulled her unmarked police car behind and slightly to the side of Penn's car. Wooden-Johnson and Kochever got out of their car and approached on each side of Penn's car. Each wore plain clothes.

Kochever and Clawson recite different versions of what happened next. Kochever's version was the more credible of the two. After the police pulled up, Kochever approached Clawson, on the passenger side of Penn's car. Kochever held his service revolver concealed in his jacket pocket, where it would be more accessible than from the ankle holster where he normally carried it. After getting out of the car, Kochever identified himself as a police officer, and told Clawson he wanted to talk to him.

Clawson, who had jumped out of Penn's car after Wooden-Johnson pulled up behind it, then began to run. After taking a few steps, he reached for the small of his back, as if to draw a gun from his waistband. Kochever then drew his gun and ordered Clawson to freeze. Clawson stopped.

In the meantime, a loud altercation had developed between Wooden-Johnson and Penn. Wooden-Johnson had approached the driver's side of the car, badge in hand. Penn swore at her and pulled the car away suddenly and stopped a short distance away. Wooden-Johnson approached again, and the same thing happened a second and third time. Eventually, Wooden-Johnson saw Penn reach for what appeared to be a gun. Wooden-Johnson shot her.

As this altercation developed, Clawson began to edge away from Kochever, who was uncertain what had happened and was worried about his partner's safety. Seeing Clawson move away, Kochever told him to stop or he would shoot him. Kochever then ordered Clawson to lay down in a spread eagle position. Clawson complied, and Kochever handcuffed him.

Kochever did not immediately search Clawson. Instead, he turned his attention to Wooden-Johnson. Clawson sat up and began to move around. Concerned that Clawson might be reaching for a weapon, Kochever pushed him down, and heard metal strike pavement. He looked down, and saw a handgun on the ground behind Clawson.

## DISCUSSION

Clawson was charged with violating section 1202(a). Pursuant to the Armed Career Criminal Amendments to that section, a mandatory minimum sentence of fifteen years is required for persons in possession of a handgun who have three prior felony convictions for robbery, burglary, or both. The court may not suspend this sentence or impose probation, and early parole is not allowed. 18 U.S.C.App. II § 1202(a).

### 1. *Dismissal Is Inappropriate.*

Clawson moved to dismiss on several grounds. In *United States v. Davidson*, Cr. No. 85–19–FR, Order at 5–6 (D.Or. May 3, 1983), Judge Frye rejected each of these grounds. I adopt her analysis. While Clawson has made some additional arguments here, particularly as to the equal protection issue, these arguments do not warrant dismissal.

After Clawson's conviction, the Supreme Court approved a state firearms statute that imposed a five-year minimum sentence, rejecting arguments similar to those made in this case. *McMillan v. Pennsylvania*, —— U.S. ——, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). The statute here is also valid.

### 2. *Clawson's Prior Convictions Are Valid.*

As I indicated before trial, each of the prior burglary and robbery convictions are valid. Only two issues merit further discussion.

The first is whether Clawson can attack the validity of the prior convictions. In *Lewis v. United States*, 445 U.S. 55, 65, 100 S.Ct. 915, 920–21, 63 L.Ed.2d 198 (1980), the Supreme Court upheld a conviction for felon in possession where the defendant's only previous conviction was constitutionally invalid. The Court agreed with Congress that irrespective of the conviction's validity, the defendant was part of a dangerous group who should not possess a firearm. *Id.* at 66, 100 S.Ct. at 921.

If all three prior convictions are necessary elements of a new crime, *Lewis* requires that there be no challenge to the convictions' validity. Clawson distinguishes *Lewis*, arguing that *Lewis* reversed established Ninth Circuit precedent, which had held that defendants charged with felon in possession could attack their prior convictions. Though Clawson's possession took place years after *Lewis* was decided, Clawson contends that *Lewis* should not be applied retroactively to predicate convictions that occurred before *Lewis*. This argument assumes that had Clawson only known that the Court would forbid collateral attack in firearms cases, he never would have committed the predicate convictions. While dictum in a Ninth Circuit case supports this position, a more recent decision squarely rejects it. *United States v. Engesser*, 788 F.2d 1401, 1403–04 & n. 1 (9th Cir.1986). I agree.

■ Clawson also contends that the Armed Career Criminal Amendments did not create a new crime,[1] but were instead a sentence enhancement provision. I agree. Thus Clawson may attack the convictions' validity. *See Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967) (improper to use invalid conviction to enhance sentence); *United States v. Williams,* 782 F.2d 1462, 1466 (9th Cir.1985) (same).

■ The second issue worth discussion is whether validity of the prior convictions should be determined by the jury. Clawson contends that the validity of his robbery conviction involves questions of fact, and that these should be decided by a jury. Validity involves legal issues, which are for the court, not the jury. Because the convictions are required for enhancement, their validity is also a sentencing matter, which is again for the court to determine. Thus even if fact questions or mixed fact and law questions are involved, there is no right to a jury trial concerning these matters. *See McMillan,* 106 S.Ct. at 2420 (court may determine fact questions pertinent to sentencing, provided they do not involve an element of the offense).

3. *Suppression Is Unnecessary.*

Clawson's fourth amendment rights were not violated. The government established that the police had an adequate basis for stopping Penn's car. The force used was also appropriate.

■ Clawson contends that the initial stop was not merely investigative, but was instead an arrest requiring probable cause. Whether this was a mere investigative stop or an arrest "depends on all the surrounding circumstances, including the extent that freedom of movement is curtailed and the degree of force used to effectuate the stop." *United States v. Harrington,* 636 F.2d 1182, 1186 (9th Cir.1981).

Whether a person is in custody or otherwise deprived of his freedom in any significant way, is answered by reviewing the totality of facts involved at the time of the alleged restraint. Pertinent areas of inquiry include the language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention and the degree of pressure applied to detain the individual. Based upon a review of all the pertinent facts, the court must determine whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave.

\* \* \* \* \* \*

Handcuffing a suspect does not necessarily dictate a finding of custody. Strong but reasonable measures to insure the safety of the officers or the public can be taken without necessarily compelling a finding that the suspect was in custody. The officers may take reasonable steps to maintain the status quo.

*United States v. Booth,* 669 F.2d 1231, 1235–36 (9th Cir.1981) (citations and quotations omitted).

The initial confrontation here was not an arrest. Both officers wore plain clothes. Their car was unmarked. Wooden-Johnson pulled the car up behind Penn's car, and did not block it. The duration of the initial detention was minimal. Only the suspects' actions made a longer detention necessary, just as it made it necessary for the officers

---

1. Because all three prior convictions were not elements of a new crime, the jury was not required to make a determination on this issue. As a precautionary measure, I nevertheless asked the jury to determine whether Clawson had committed the three prior convictions. In the event the Circuit holds that the three convictions are elements of a new offense, then remand should not be necessary.

At Clawson's request, trial was bifurcated. In the first phase, the parties stipulated that Clawson was a convicted felon. The question for the jury was whether he possessed a firearm. The jury did not learn of the three prior convictions until the second phase, when it was asked to find if these convictions in fact occurred. To guarantee Clawson a fair trial, I also prevented the Government from questioning him about other past convictions.

to draw their weapons. *See also United States v. Jacobs,* 715 F.2d 1343, 1345–46 (9th Cir.1983) (valid stop not transformed into arrest because officer pointed gun at possibly armed suspect).

Given that the confrontation was only an investigative stop at its inception, the officers required only an articulable suspicion of wrongdoing. The police had such a basis, even after direct and derivative evidence gained from the illegal search is expunged. Several details of Ellingboe's tip were corroborated. Ellingboe stated that Art and Kitt were staying at the Chumaree, and were driving a brown El Camino and a blue car. Kochever found a brown El Camino in the Chumaree lot. Penn identified the car as hers, and was also driving a blue car. She then went into a room at the motel. Her companion was a male who hid in the bushes after seeing a stranger examining the El Camino. Ellingboe had warned that Art and Kitt were armed, and described their forgery operation. There was more than enough information here for an articulable suspicion of wrongdoing by Clawson.

A final issue here is whether suppression is required under Oregon law. Assuming for argument that Oregon law applies, it was not violated. While Oregon search and seizure law may be more liberal than federal law, Oregon law still allows police to make an investigative stop under these circumstances. Suppression is not required.

## CONCLUSION

Defendant's motion to dismiss are denied. His previous convictions are valid, and support an enhanced sentence. Defendant's motion to suppress is denied.