RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0025p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————

BOBBIE M. SMITH, on behalf of herself and all others
similarly situated, et al.,
          *Plaintiffs-Appellants*,

          *v.*

TIPTON COUNTY BOARD OF EDUCATION,
          *Defendant-Appellee*.

⎤
⎟
⎟
⎟
⎟
⎬  No. 18-5426
⎟
⎟
⎟
⎟
⎦

———————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:17-cv-02282—Sheryl H. Lipman, District Judge.

Argued:  December 6, 2018

Decided and Filed:  February 21, 2019

Before:  MOORE, GIBBONS, and COOK, Circuit Judges.

———————

## COUNSEL

———————

**ARGUED:**  Alan Crone, THE CRONE LAW FIRM, PLC, Memphis, Tennessee, for Appellants.
Stephen L. Shields, JACKSON, SHIELDS, YEISER & HOLT, Memphis, Tennessee, for
Appellee.  **ON BRIEF:**  Alan Crone, THE CRONE LAW FIRM, PLC, Memphis, Tennessee, for
Appellants.  Stephen L. Shields, Debra D. Owen, JACKSON, SHIELDS, YEISER & HOLT,
Memphis, Tennessee, for Appellee.

———————

## OPINION

———————

JULIA SMITH GIBBONS, Circuit Judge.  During the 2016 tax year, an employee of the
Tipton County Board of Education ("Board") disclosed the Board employees' W-2 tax

information to a third party. Bobbie Smith, as a potential class representative for individuals whose information was disclosed, sought to hold the Board liable for the negligent sharing of the employees' return information, arguing that the Board is a "person" that administers a SNAP benefit program. The district court dismissed the lawsuit, finding that the Board's school lunch program did not qualify as a SNAP benefit program. The court did not comment on Smith's other arguments. Because the Board does not administer a SNAP benefit in providing lunches to students as part of the National School Lunch Program, we affirm.

I.

On January 23, 2017, Margaret "Peggy" Murdock, an employee with the Board, received an email from a third party, purporting to be Dr. William Bibb, Director of Tipton County Schools, requesting all 2016 employee W-2s and tax information.[1] The email read in full:

> Peggy,
>
> I want you to send me the list of W-2 copy of employees wage and tax statement for 2016, I need in PDF file type, you can send it as an attachment. Kindly prepare the lists and email them to me asap.
>
> Thanks.
>
> Dr. William E. Bibb

(DE 19-8, Murdock Decl., PageID 142.) Murdock responded to the email and included a document containing information from the W-2s of every Board employee. According to the complaint, this included the names, addresses, social security numbers, income information, deductions, exemptions, withholdings, tax payments and taxpayer identifying numbers.

Murdock then went to Dr. Bibb's office "to ask the purpose of his request because [she] thought there might be a better way to provide him the needed information." (DE 19-8, Murdock Decl., PageID 139.) From Dr. Bibb's reaction, Murdock inferred that he had not requested the information. When Murdock took Dr. Bibb back to her office to look at the email, there was a new, second email, responding to the disclosed information. That email read, in full:

---

[1]Because Smith is appealing the district court's granting of the Board's motion to dismiss, the facts are largely as alleged in Smith's initial complaint.

> Peggy,
>
> I received the PDF file but you are yet to forward me list that includes all employees First Name, Last Name, Address, Phone Number and Date of Birth.  I want this in Excel File
>
> Thanks.
>
> Dr. William E. Bibb

(DE 19-8, Murdock Decl., PageID 143.)  Upon realizing that they had been scammed, Dr. Bibb and Murdock called their technology department to see if the emails could be retrieved.  When he learned that the emails could not be retrieved, Dr. Bibb called the Tipton County Sheriff.  The Sherriff's Department subsequently notified the U.S. Secret Service and the Internal Revenue Service about the incident.  The Sherriff's Department continues to investigate the incident.  On January 24, 2017, the Board notified employees of the information release, including social security numbers, in a letter signed by Dr. Bibb.

Bobbie Smith has been employed by the Board since January 2003, working as a bus driver for the Tipton County School System.  Smith filed this lawsuit on April 24, 2017, alleging that the Tipton County Board of Education violated 26 U.S.C. § 6103 by disclosing its employees' tax return information to the third party.  Smith seeks damages under 26 U.S.C. § 7431, which provides a private right of action for violations of 26 U.S.C. § 6103.  Smith argues that, because the Board works with the Tennessee State Board of Education to administer the National School Lunch Program, which provides free or low-cost lunches to low-income students, the Board provides a SNAP benefit.

Under Tennessee law, every school board is required to establish a school lunch program in each school in its jurisdiction.  Tenn. Code Ann. § 49-6-2302.  In Tipton County, any student from a household that receives SNAP benefits is automatically enrolled in the National School Lunch Program in Tipton County.  The Board has conceded that SNAP is a program "operated pursuant to the Food and Nutrition Act," but denies that the National School Lunch Program qualifies as a SNAP benefit.  (DE 19-1, Mot. to Dismiss, PageID 65.)

In addition, Smith sought to bring the action on behalf of all Board employees, pursuant to Federal Rule of Civil Procedure 23(b)(1) and 23(b)(3).  Other members of the potential

plaintiff class include bus drivers, cafeteria workers, child care employees, and substitute teachers.  Specifically, Smith identifies the class as: "All individuals working for or providing services on a full-time, part-time, seasonal, or probationary basis for Tipton County Board of Education during the tax year 2016 whose tax information was disclosed to a third party by email on or about January 23, 2017."  (DE 1, Compl., PageID 8.)

Smith sought "an amount not less than" $19 million in damages (DE 1, Complaint, PageID 12), claiming that each disclosure of the W-2 information constituted a separate violation of 26 U.S.C. § 7431, which provides for the greater amount of either $1,000 for each disclosure or actual damages.  Smith also sought punitive damages against Tipton County because of the "gross negligence" exhibited in the disclosure, as well as attorneys' fees.  (*Id.*)

The Board filed a motion to dismiss or, in the alternative, for summary judgment on June 7, 2017.  The district court treated the motion as a motion to dismiss, finding that "[t]aking all of the allegations of Plaintiffs' complaint as true, the Court is left with a purely legal question— given Defendant's administration of the [National School Lunch Program] and the connection between that program and SNAP, does it also 'administer' SNAP?"  (DE 42, Order, PageID 290.)  On April 2, 2018, the district court issued a final judgment, dismissing Smith's claim with prejudice.  The district court held that the Board does not "administer" a program under the Food and Nutrition Act, which established SNAP benefits.  Smith filed a notice of appeal on April 26, 2018.

II.

To bring a claim under 26 U.S.C. § 7431, Smith must demonstrate that the National School Lunch Program is a SNAP benefit; that the released wage and tax information was "return information" as defined under 26 U.S.C. § 6103; and, finally, that the Board of Education is a "person" as defined in 26 U.S.C. § 7431, which establishes the "persons" subject to civil action damages for disclosures prohibited under 26 U.S.C. § 6103.  Because we find that the Board was not administering a SNAP benefit in providing free lunches as part of the National School Lunch Program, we decline to consider the other issues.

A.

Whether the district court was correct in dismissing Smith's claim under Rule 12(b)(6) is a question of law that this court reviews *de novo*. *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The complaint must not only include legal conclusions, but must make factual allegations, which are accepted as true to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering plausibility, the court must construe the complaint in the light most favorable to the plaintiff. *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013).

B.

Section 6103 of the Internal Revenue Code prohibits "any local agency administering a program listed in [§ 6103](l)(7)(D)" from disclosing "return information." 26 U.S.C.A. § 6103(a)(2). In relevant part, § 6103(l)(7)(D) includes "assistance provided under the Food and Nutrition Act" as a program to which the prohibition applies. 26 U.S.C.A. § 6103(l)(7)(D)(vi). Under 26 U.S.C. § 7431, any taxpayer whose return information has been disclosed has a private right of action to sue the agency for a violation of 26 U.S.C. § 6103: "If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States." 26 U.S.C.A. § 7431(a)(2). Thus, if the Board administers a SNAP benefit program, then Smith and other Board employees could sue for the negligent disclosure of their employee W-2 information.

Smith claims that the Tipton County Board of Education is one such "local agency administering a program," because the Board coordinates the county's National School Lunch Program, which Smith argues is a SNAP benefit because a student from a household that receives SNAP benefits is automatically enrolled in Tipton County's school lunch program. Smith argues that the Board has even admitted to its involvement in the administration of SNAP benefits by providing free school meals to students who receive SNAP benefits. For the following reasons, Smith's interpretation is contrary to the plain meaning of the statute, as well as the legislative intent.

1.

The Tipton County Board of Education's school lunch program is not a SNAP benefit. "[I]n any case concerning the interpretation of a statute[,] the 'starting point' must be the language of the statute itself." *Lewis v. United States*, 445 U.S. 55, 60 (1980) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337 (1979)). The Food and Nutrition Act established the supplemental nutrition assistance program ("SNAP") so that "eligible households within the State [would] be provided an opportunity to obtain a more nutritious diet through the issuance to them of an allotment . . . ." 7 U.S.C.A. § 2013(a). The Food and Nutrition Act defines a "benefit" as "the value of supplemental nutrition assistance provided to a household by means of (1) electronic benefit transfer under § 2016(i) of this title; or (2) other means of providing assistance, *as determined by the Secretary*." 7 U.S.C.A. § 2012(d) (emphasis added).

Smith argues that the Board "provides 'other means of assistance' in administering SNAP benefits because it is a local education authority responsible for, among other SNAP-related obligations, announcing availability of SNAP benefits in the form of free school meals and confirming that SNAP recipients receive free school meals." (CA6 R. 18, Appellant Br., at 13.) Such an interpretation misrepresents the statute.

Section 2012 does not simply refer to "other means of providing assistance." Instead, it refers only to "other means of providing assistance, *as determined by the Secretary*." 7 U.S.C.A. § 2012(d) (emphasis added). Here, "Secretary" refers to "the Secretary of Agriculture." 7 U.S.C.A. § 2012(p). An accurate representation of the statute would be, "The term 'benefit'

means the value of supplemental nutrition assistance provided to a household by . . . other means of providing assistance, as determined by the Secretary [of Agriculture]." 7 U.S.C.A. § 2012(d). Thus, §2012(d) provides the Secretary of Agriculture with discretion to create new assistance programs.

Tennessee state law further acknowledges the Secretary's discretion in administering SNAP benefits. The Tennessee Code, for example, requires that the department of human services "[c]ooperate with the secretary of the United States department of agriculture . . . in any reasonable manner as may be necessary to qualify for federal aid for food stamp assistance or food assistance in conformity with this part, including the making of such reports in such form and containing such information as the secretary of agriculture . . . may from time to time require[.]" Tenn. Code Ann. § 71-5-304(4).

Smith would read out of the statute the legislature's granting of discretion to the Secretary, instead understanding the statute to cover any "other means of assistance." The Secretary has not decided, nor has Smith even argued that the Secretary has decided, that the National School Lunch Program is one such SNAP benefit.

Further, when addressing the use of the benefit, the statute states that "[t]he benefits so received by such households *shall be used only to purchase food from retail food stores* which have been approved for participation in the supplemental nutrition assistance program." 7 U.S.C.A. § 2013(a) (emphasis added). The same section goes on to explain that the benefits "shall be redeemable at face value by the Secretary . . . ." *Id.* Meanwhile, "household" is defined as an individual or a "group of individuals who live together and customarily purchase food and prepare meals together *for home consumption*." 7 U.S.C.A. § 2012(m)(1)(B) (emphasis added). Finally, a "retail food store" is "an establishment . . . that sells food *for home preparation and consumption*." 7 U.S.C. § 2012(o)(1) (emphasis added). Thus, the plain meaning of the statutes clearly anticipates that SNAP benefits will take the form of an assignable dollar value to be used for retail food purchases to be prepared at home for home consumption. Such an interpretation would not include a program that provides school lunches to students from low-income households.

Similarly, the legislative intent behind the SNAP Act differed significantly from that of the National School Lunch Program. Congress created SNAP to "alleviate . . . hunger and malnutrition [and] permit low-income households to obtain a more nutritious diet *through normal channels of trade* by increasing *food purchasing power* for all eligible households who apply for participation." 7 U.S.C.A. § 2011 (emphasis added). Meanwhile, Congress enacted the National School Lunch Program "to encourage the domestic consumption of nutritious agricultural commodities and other food, by assisting the States, through grants-in-aid and other means, in providing an adequate supply of foods and other facilities for the establishment, maintenance, operation, and expansion of nonprofit school lunch programs." 42 U.S.C.A. § 1751. Therefore, it is clear that Congress contemplated two different statutory purposes in addressing two different issues they identified, one supporting households in their purchasing of food and the other providing funding to support school lunch programs.

2.

Smith argues that the Board "administers" a SNAP benefit program because any students from households that receive SNAP benefits are automatically eligible to receive a free or low-cost school lunch. But, the automatic eligibility criterion is insufficient to establish that the Tipton County Board of Education "administers" a SNAP benefit program. Administrative responsibilities regarding SNAP benefits are placed on State agencies. 7 U.S.C. §2020(a)(1). In Tennessee, the Tennessee Department of Human Services "[s]upervise[s] the administration of the food stamp or food assistance program . . . for eligible recipients . . . ." Tenn. Code Ann. § 71-5-304. Applicants hoping to be eligible for benefits must submit an application to their county office of the state department of human services. Tenn. Code Ann. §§ 71-5-303(5), 71-5-306, 71-5-307.

Responsibility for administering the National School Lunch Program, however, lies with the Tennessee State Board of Education, as well as local school boards. The Tipton County Board of Education thus argues that it "operates a school nutrition program pursuant to the provisions of Tenn. Code Ann. § 49-6-2303 and the regulations thereto, providing school lunches and breakfasts in compliance with the standards and requirements of the Tennessee School Nutrition Standards Act (Tenn. Code Ann. § 49-6-2301 *et seq.*), the federal National School

Lunch Act (42 U.S.C. § 1751 *et seq.*) and the federal Child Nutrition Act of 1966 (42 U.S.C. § 1771 *et seq.*), and other specific federal statutes that are separate and apart from the Food and Nutrition Act." (CA6 R. 19, Appellee Br., at 21) (footnote omitted.) The district court found that the Board does not accept applications for SNAP benefits, determine eligibility, issue coupons, or enforce any SNAP regulations.

The National School Lunch Program, meanwhile, provides free or low-cost lunches to students from low-income households. A student is automatically eligible to receive free lunch if she falls into one of seven categories, including if the child is a "member of a household receiving assistance under the supplemental nutrition assistance program authorized by the Food and Nutrition Act." 42 U.S.C. § 1758(b)(12)(A)(i).[2] In Tipton County, any student whose household receives SNAP benefits is automatically deemed eligible to participate in the National School Lunch Program. Though the Tennessee State Board of Education is tasked with administering the National School Lunch Program in Tennessee, the State Board has entered into a USDA-approved agreement with the Tipton County Board of Education which covers operation of the school lunch program.

Apart from this automatic eligibility criterion, the Board has no association with SNAP benefits. Thus, the two programs are administered by separate entities and created to serve two legislative statutory purposes.

---

[2]The seven categories which would make a student automatically eligible for a free lunch and breakfast, as provided by 42 U.S.C. § 1758, are: "(i) a member of a household receiving benefits under the supplemental nutrition assistance program authorized under the Food and Nutrition Act of 2008," "(ii) a member of a family . . . that the Secretary determines complies with standards established by the Secretary that ensure that the standards under the State program are comparable to or more restrictive than those in effect on June 1, 1995," "(iii) enrolled as a participant in a Head Start program authorized under the Head Start Act . . . on the basis of a determination that the child meets the eligibility criteria prescribed under Section 645(a)(1)(B) of the Head Start Act," "(iv) a homeless child or youth," (v) a child "served by the runaway and homeless youth grant program established under the Runaway and Homeless Youth Act," "(vi) a migratory child," or (vii) a foster child whose care and placement is the responsibility of a State agency or who the courts have placed with a caretaker household. 42 U.S.C. § 1758(b)(12)(A).

III.

We therefore affirm the district court and find that the Board of Education did not administer a SNAP benefit in providing free lunches to students under the National School Lunch Program.