**UNITED STATES of America, Appellee,**

v.

**Gary L. KIRVAN, Defendant–Appellant.**

**No. 678, Docket 95–1251.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 5, 1995.

Decided June 18, 1996.

Robert A. Napier, Rochester, New York, for Appellant.

Christopher V. Taffe, Assistant United States Attorney, Western District of New York, Rochester, New York (Patrick H. NeMoyer, United States Attorney, Western District of New York, Elizabeth E. Nam, Law Clerk, Rochester, New York, of counsel), for Appellee.

Before NEWMAN, Chief Judge, FEINBERG and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Friday, February 7, 1992 was a busy day for the Central Trust Co., a Rochester, New York bank. At 10:45 a.m. Mary Ellen Boone, an experienced teller, had just completed a business transaction with a customer when, looking up, she suddenly saw a man, later identified as defendant Gary L. Kirvan, pointing a shiny black gun at her. The parties describe this gun as a .44 caliber black powder revolver, a replica of an antique. Defendant placed the gun, together with a note, on the counter before her. The note demanded all her cash and Kirvan ordered her to "[d]o what the note says or you're dead." She handed him all her 100s, 50s, and 20s and, upon his waving the gun at her and telling her to "[k]eep going," she gave him, in addition, all the 10s, 5s, and singles in her top drawer. After the defendant stuffed this cash amounting to $2,527 in his pockets, he fled. Later, he was apprehended while committing another armed bank robbery in Lebanon, Tennessee.

Following a trial, a jury found defendant guilty of the armed bank robbery in Rochester. He received a 30 month sentence, consecutive to the undischarged portion of his sentence for the Tennessee robbery. Defendant now appeals, raising as the sole issue the propriety of a five-level sentence enhancement for the use of a firearm in the course of the robbery, rather than a three-level enhancement for the brandishing of a dangerous weapon.

## PRIOR PROCEEDINGS

An indictment dated April 30, 1992 charged Kirvan and two others with various offenses for their involvement in the crime committed in Rochester. Kirvan was charged with committing bank robbery in violation of 18 U.S.C. § 2113(a), bank larceny in violation of 18 U.S.C. § 2113(b), armed bank robbery in violation of 18 U.S.C. § 2113(d), and with carrying or using a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c). He was tried separately before a jury in the United States District Court for the Western District of New York (Telesca, C.J.). Before trial the government moved, in the interest of justice, to dismiss the charge of carrying or using a firearm in a crime of violence because § 924(c) does not apply to "antique firearms," see 18 U.S.C. § 921(a)(3). The district court granted the motion. The jury returned a guilty verdict for bank robbery and armed bank robbery, and therefore did not reach the bank larceny charge.

At the sentencing hearing, the trial court noted that the bank robbery and armed bank robbery convictions merged, and it sentenced defendant only for the latter conviction. The probation department recommended a five-level upward adjustment under § 2B3.1(b)(2)(C) of the United States Sentencing Guidelines (U.S.S.G. or Guidelines), which applies to robberies during which the defendant "brandished, displayed, or possessed" a firearm. The defendant objected to the upward adjustment, contending that the weapon used in the robbery was not a "firearm" for purposes of § 2B3.1(b)(2)(C) because it was an "antique." Instead, defendant contended, the use of the weapon warranted only the three-level upward adjustment for use of a dangerous weapon specified in U.S.S.G. § 2B3.1(b)(2)(E).

The government agreed that the gun was an antique, but nonetheless maintained it was a firearm under the Guidelines. In imposing the five-level upward adjustment, the district court reasoned that the antique gun fell within the relevant definition of "firearm," see U.S.S.G. § 2B3.1 Application Note 1 (incor-

porating definition of "firearm" in U.S.S.G. § 1B1.1 Application Note 1(e)), and that the exclusion of antiques from the coverage of the Gun Control Act, *see* 18 U.S.C. § 921(a)(3) (1994), was inapplicable. Defendant now appeals the sentence enhancement as inappropriate under Guidelines § 2B3.1. We affirm.

## DISCUSSION

### I. Guidelines Construction

#### A. *In General*

■ This appeal requires us to decide whether an antique gun is a "firearm" for purposes of the five-level enhancement set forth in U.S.S.G. § 2B3.1(b)(2)(C). We analyze this provision of the Guidelines in light of what is an allegedly contrary provision contained in the Gun Control Act of 1968, Pub.L. No. 90–618, § 101, 82 Stat. 1213 (1968) (codified at 18 U.S.C. § 921(a)(3) (1994)) (Gun Control Act or Act), a statute passed by Congress.

■ The Sentencing Commission, created under the Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 217(a), 98 Stat.2017–26 (1984) (codified at 28 U.S.C. §§ 991–98 (1994)), promulgates the Guidelines under an express delegation of rulemaking authority from Congress. *See* 28 U.S.C. § 994(a)(1). The Guidelines "are the equivalent of legislative rules adopted by federal agencies." *Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993). Because they determine what sentences individual defendants receive, the Guidelines have the force and effect of law. Congress was empowered to revoke or amend any Guidelines within the 180–day waiting period established by § 235(a)(1)(B)(ii)(III) of the Sentencing Reform Act, 98 Stat.2031–32, or, for that matter, at any time. *See Mistretta v. United States,* 488 U.S. 361, 393–94, 109 S.Ct. 647, 666, 102 L.Ed.2d 714 (1989); *cf.* 28 U.S.C. § 994(p) (current provision for Congressional consideration of amendments). Hence, the Commission's Guidelines may be trumped by an Act of Congress. For example, when a sentence is fixed by statute, a contrary Guideline would be ineffective. *See Stinson,* 508 U.S. at 47, 113 S.Ct. at 1920

(noting validity of a Guideline unless it contravenes federal statute or Constitution, or is plainly erroneous).

■ The question we must answer is whether, as defendant maintains, the Gun Control Act overrides the Sentencing Guidelines' definition of a firearm. In resolving this question we examine the Guideline and statute in question with some particularity. And, in so doing, we are guided by the notion that the Guidelines, having the force and effect of law, are to be construed as if they were a statute, giving the words used their common meaning, absent a clearly expressed manifestation of contrary intent. *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981).

■ Such an approach has been adopted by a number of our sister Circuits. *See United States v. Gacnik,* 50 F.3d 848, 852 (10th Cir.1995); *United States v. Rocha,* 916 F.2d 219, 243 (5th Cir.1990), *cert. denied,* 500 U.S. 934, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991); *United States v. Lewis,* 900 F.2d 877, 880 (6th Cir.), *cert. denied,* 498 U.S. 840, 111 S.Ct. 117, 112 L.Ed.2d 86 (1990); *United States v. Donley,* 878 F.2d 735, 741 (3d Cir. 1989), *cert. denied,* 494 U.S. 1058, 110 S.Ct. 1528, 108 L.Ed.2d 767 (1990). We have recognized the soundness of these principles. *See United States v. Correa–Vargas,* 860 F.2d 35, 38 (2d Cir.1988) (relying on "familiar principles of statutory interpretation" in reading Guidelines). Because this challenge to the application of the Guidelines involves a purely legal question, we review the district court's decision *de novo. See United States v. Vazzano,* 906 F.2d 879, 883 (2d Cir.1990).

#### B. *Specific Guidelines Provisions*

Keeping in mind this general background of what the Guidelines are and how they are to be construed, we turn first to the provision found in § 2B3.1 of the Guidelines, which is the section used to determine the base offense level for a defendant who has committed a robbery. Section 2B3.1(b)(2) enhances the offense level by seven levels if during the commission of a robbery a firearm is discharged, six levels if a firearm is "otherwise used," five levels if a firearm is "brandished,

displayed or possessed," four levels if a dangerous weapon was "otherwise used," three levels if a dangerous weapon was "brandished, displayed or possessed," or two levels if an express threat of death was made.

The specific provision at issue on this appeal, § 2B3.1(b)(2)(C), states: "if a firearm was brandished, displayed, or possessed, increase by 5 levels." The commentary accompanying § 2B3.1 makes clear that the term "firearm" is defined "in the Commentary to § 1B1.1 (Application Instructions)." That definition reads:

> "Firearm" means (i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (ii) the frame or receiver of any such weapon; (iii) any firearm muffler or silencer; or (iv) any destructive device. A weapon, commonly known as a "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm.

U.S.S.G. § 1B1.1 Application Note 1(e).

■ The gun concededly used by the defendant falls squarely within the plain language of this definition of "firearm." The district court adopted the probation department's finding that defendant used an antique .44 caliber black powder revolver to commit the crime. This type of weapon uses gun powder to propel a bullet. Defendant does not assert that the gun was in some way inoperable and does not otherwise dispute the probation department's finding. Rather, he relies exclusively on the argument that an antique firearm does not trigger the five-level upward adjustment under § 2B3.1(b)(2)(C).

Although defendant indicated at the sentencing hearing that the pistol was not loaded when the robbery was committed, the definition in § 1B1.1 does not distinguish between loaded and unloaded firearms. The only explicit exception to the applicable definition of "firearm" is one for pellet guns using certain pressurized gases. That exception is clearly inapplicable to a black powder weapon designed to expel a projectile through the use of an explosive. We therefore conclude that the relevant definition of "firearm" is unambiguous, and that, by its terms, it applies to the case at hand.

### C. Statutory Definition of Firearm

Kirvan contends, however, that despite the language of the definition set forth in the U.S.S.G. § 1B1.1 commentary, antique weapons were intended to be excluded from the definition of "firearm" for purposes of the Guidelines. For that proposition, defendant relies on the exclusion of antique guns from the definition of "firearm" found in the Gun Control Act of 1968, which provides:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3). It is true that courts have consistently held that antique guns are not firearms for purposes of the criminal prohibitions contained in that Act. See, e.g., United States v. Mayo, 705 F.2d 62, 76 (2d Cir.1983) ("antique firearm" exception in federal firearms laws is an affirmative defense that must be raised by the defendant); United States v. Washington, 17 F.3d 230, 232 (8th Cir.) (holding that once defendant produces evidence sufficient to raise a genuine dispute over whether firearm is an antique, the government must prove otherwise beyond a reasonable doubt), cert. denied, —— U.S. ——, 115 S.Ct. 153, 130 L.Ed.2d 92 (1994); United States v. Smith, 981 F.2d 887, 891–92 (6th Cir.1992) (following Mayo ).

### II. Purposes of Gun Control Act and Guidelines Provision

#### A. Gun Control Act

Comparing the purposes underlying the Gun Control Act, including the statute's exception for antique guns, with the aims of the sentencing enhancement for defendants who use firearms in committing a robbery, is helpful in resolving the issue before us. Congress passed the Gun Control Act because "[t]he increasing rate of crime and

lawlessness and the growing use of firearms in violent crime clearly attest[ed] to a need to strengthen Federal regulation of interstate firearms traffic." H.R.Rep. No. 1577, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410, 4412 (House Report). Congress was concerned because, among other things, guns had been used in an untold number of violent crimes. *Id.* at 4413.

The Gun Control Act therefore significantly modified firearms regulations by requiring firearms dealers to be licensed, 18 U.S.C. § 923 (1994) (current version), imposing certain conditions on the importation of firearms, *id.*, and prohibiting certain types of firearms transactions altogether, 18 U.S.C. § 922. The Act also provided for enhanced penalties where a defendant uses or possesses a firearm in committing certain crimes. *See* 18 U.S.C. § 924(c) (1994) (current version). The enhanced penalties provision was not part of the 1968 gun legislation at the time it was introduced; it was added as an amendment on the floor of the House of Representatives. *See* 114 Cong. Rec. 22231, 22248 (1968) (substitute amendment offered by Representative Poff); *cf. Busic v. United States,* 446 U.S. 398, 405–06, 100 S.Ct. 1747, 1752–53, 64 L.Ed.2d 381 (1980) (noting lack of evidence of congressional intent).

To ensure that the new regulatory scheme governing firearms transactions would not result in an undue imposition on gun collectors, Congress stated that the Gun Control Act would not apply to "antique firearm[s]." *See* House Report at 4415 ("If the firearm is an 'antique firearm' as defined in section 921(a)(15), the transaction is exempted entirely from any coverage of the bill."); *Mayo,* 705 F.2d at 76 (Congress exempted antique firearms "to safeguard the rights of persons who deal in a narrow class of weapons."). *See also* 18 U.S.C. § 921(a)(3) (1994); 18 U.S.C. § 921(a)(16) (1994) (defining "antique firearm"). Thus, the Gun Control Act's exception for antique guns in its definition of firearms was to protect collectors of such weapons.

### B. *§ 2B3.1 Enhancements*

The purpose of the sentencing enhancement in the Guidelines for the use of a firearm in the course of an armed robbery is reflected in the "background" portion of the commentary appended to U.S.S.G. § 2B3.1: "Possession or use of a weapon, physical injury, and unlawful restraint sometimes occur during a robbery. The guideline provides for a range of enhancements where these factors are present." Hence, the Guidelines recognize that a criminal who uses a firearm in the commission of a robbery is ordinarily guilty of a more serious offense— and deserves more punishment—than someone who, for example, threatens a victim without employing a weapon.

### III. Resolution of Alleged Inconsistency Between Guidelines and Gun Control Act

Although Kirvan concedes, as he must, that the definition in the § 1B1.1 commentary makes no reference to the Gun Control Act or to any exception for antique weapons, he points out that the Act *is* mentioned elsewhere in the Guidelines—in U.S.S.G. § 2K2.1. The commentary accompanying § 2K2.1—which governs when a defendant is sentenced for firearms trafficking offenses under the Act—quotes, in significant part, the definition found in § 921(a)(3) of the Act without referring specifically to the exception for antique guns. *See* U.S.S.G. § 2K2.1 Application Note 1. It also provides a citation to § 921(a)(3). The commentary goes on to cite the definition of "firearm" in 26 U.S.C. § 5845(a), without mentioning the exception for antiques that section contains. *See* U.S.S.G. § 2K2.1 Application Note 3.

■ Defendant asserts that this reference in the Guidelines to 18 U.S.C. § 921(a)(3)— the Gun Control Act definition that contains an explicit exception for antiques—indicates that the drafters of the Guidelines intended such an exception to apply under U.S.S.G. § 2B3.1(b)(2)(C). We are unable to agree. An exception in a statute is presumed to apply only to the section to which it is attached. *United States v. Hescorp, Heavy Equip. Sales Corp.,* 801 F.2d 70, 74 (2d Cir.), *cert. denied,* 479 U.S. 1018, 107 S.Ct. 672, 93 L.Ed.2d 723 (1986). That is the rule we must follow here because although Congress put the "antique firearm" exception in the

Gun Control Act (and the Commission arguably included the exception in § 2K2.1 of the Guidelines), the Commission did not include it in the definition we are asked to construe; nor did Congress cancel or amend the relevant Guidelines provision within the 180–day period or at any other time. Such an exception will be read broadly only when expressed or implied legislative goals would otherwise be frustrated. *Id.* at 74.

■ Similarly, where certain exceptions to a general prohibition are explicitly enumerated, no additional exceptions may be inferred, unless such purpose is clearly discerned. *See United States v. Smith,* 499 U.S. 160, 167, 111 S.Ct. 1180, 1185, 113 L.Ed.2d 134 (1991). The definition in the Guidelines that applies to robbery convictions—the one found in the § 1B1.1 commentary—contains an explicit exception for certain pellet guns that harness the pressure of air or carbon dioxide. Given that the black powder revolver falls squarely within the general Guidelines definition of "firearm" and that no other exception is provided, we must presume that another exception for antique guns was not intended by implication.

Kirvan insists it is logically inconsistent to apply the antique weapon exception to the Gun Control Act's criminal prohibitions but not to the sentence enhancement provisions for robbery convictions, and that we should construe the overall sentencing scheme in such a way as to harmonize potentially discordant provisions, *see United States v. Bass,* 404 U.S. 336, 344, 92 S.Ct. 515, 521, 30 L.Ed.2d 488 (1971). Such a view is untenable. The policy motivating the Gun Control Act's exception for antiques—allowing gun collectors to pursue their hobby—hardly has relevance in the context of determining the proper sentence for a person found guilty of armed robbery. An armed robbery is no less serious by virtue of the fact that the culprit happened to brandish an old or valuable pistol instead of a new one, although the crime might be more exotic or newsworthy. Like a rose, which "[b]y any other name would smell as sweet," William Shakespeare, *Romeo and Juliet* act II, sc. 2, line 44 (W.J. Craig ed., Oxford Univ. Press 1928), so Kirvan's firearm, be it new or antique, could kill as well.

Giving more lenient sentences to antique-gun-toting defendants would not promote the legislative aim of insulating gun collectors from the regulatory scheme contained in the Gun Control Act. If anything, it might make this the preferred way to commit this type of crime. Quite plainly, armed robbery is not the sort of hobby Congress planned to protect when it exempted antiques from that statute's coverage.

For purposes of the criminal law, if there is any incongruity in the way Congress has defined "firearm" it lies in the applicability of the exception for antique guns to 18 U.S.C. § 924(c), the section that penalizes a defendant for carrying or using a firearm with respect to certain underlying crimes. Congress could have, it seems, fully protected gun collectors from the new firearms regulations without exempting from § 924(c) violent criminals who happen to use antique guns. It chose, however, to leave in place the broad exception for antiques—one that applies to the entire Gun Control Act—despite the addition of § 924(c). It is for this reason that the district court granted the government's motion to dismiss the § 924(c) charge against Kirvan. If we were interpreting the Gun Control Act in the present case, we would, of course, be required to effectuate Congress' decision to give the "antique firearm" exception a broad reach.

But our task today involves construing a section of the Sentencing Guidelines in which the antique gun exception is conspicuously *absent* from the definition of "firearm." Imposing a higher sentence for a robbery in which a gun was displayed—whether the gun was old or a new replica of an old gun—is perfectly consistent with the purposes underlying the enhancements provided in U.S.S.G. § 2B3.1: criminals who make use of such weapons are more culpable than those who do not. In addition, the fact that another portion of the Guidelines— § 2K2.1—incorporates the definition of "firearm" found in the Gun Control Act is not surprising, since that section—unlike § 2B3.1—applies to offenses that are set forth in the Gun Control Act.

In the present case there is simply no evidence of a purpose to be served that

would lead us to apply the Gun Control Act's "antique firearm" exception to the portion of the Guidelines dealing with robberies in which firearms are displayed. Nor by the same token is there any evidence that a meaning other than that plainly indicated by the Guidelines' language was intended. Consequently, there is no basis for adopting defendant's view of the Guidelines. *See Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701–02, 66 L.Ed.2d 633 (1981) (explaining that judicial construction of statutes is ordinarily complete when statutory terms are unambiguous).

Finally, Kirvan tells us that we should be reluctant to interpret "firearm" to include antique weapons because federal courts in the last quarter century have consistently held to the contrary. To do so, defendant asserts, would constitute a radical departure from established law. Today's decision raises no such concerns. Because the Gun Control Act of 1968 has contained an explicit exception for antique weapons since the date of its enactment, it is not a matter of wonderment that courts have enforced the exception in cases to which the Act applies. *See, e.g., Mayo,* 705 F.2d at 73–76 (interpreting exception in 18 U.S.C. § 921(a)(3)). The Act merely exempted antiques from its coverage—it did not purport to establish a general rule that an antique gun is not really a firearm. Nor does the case law interpreting the Act establish such an astounding proposition. Thus, following the plain language of the definition in the commentary accompanying § 1B1.1 does not require us to deviate from any long-standing rule of law.

## CONCLUSION

Accordingly, we hold that an antique gun is a "firearm" for purposes of the sentencing enhancement in § 2B3.1(b)(2)(C) of the Guidelines. Defendant's sentence is affirmed.