**UNITED STATES of America,**

v.

**Merton REYNOLDS, Defendant.**

**No. 00 CR. 480(AKH).**

United States District Court,
S.D. New York.

April 19, 2001.

## MEMORANDUM AND ORDER OF SENTENCING

HELLERSTEIN, District Judge.

After three days of deliberation following a three-day trial, a jury of eleven persons[1] found Merton Reynolds guilty of unlawful possession of a firearm after having been convicted fifteen years earlier of criminal sale of a controlled substance, $100 worth of cocaine, a Class B felony under N.Y. Penal Law § 220.16. *See* 18 U.S.C. § 922(g)(1). I write to explain Defendant Reynolds' sentence.

### Factual Background

Defendant Merton Reynolds is forty-two years old, single and African–American. He supports his aged, retired parents, now living in Anthony, Florida. Alone and with his father, he owns three small buildings of thirty-one apartments in the Gun Hill Road area of the northeast Bronx, and personally manages and maintains the apartments for rental income. He also owns and operates a Tropicana-juice route, making distributions to retail stores in the Bronx, and has been negotiating with his route supplier to take on a second and expanded route.

Mr. Reynolds is thus a hard-working and responsible person. His three buildings present islands of stability in depressed and often chaotic neighborhoods of empty lots, vacant buildings, heavy drug-trafficking and frequent violence. For the last ten years, he has had a substantially quiet and law-abiding life.

It was not always thus. In the 1980s, when he was in his twenties, Mr. Reynolds experienced several convictions: disorderly conduct, shoplifting, and the criminal sale conviction already mentioned, in 1984; a disorderly conduct charge in connection with a motor vehicle arrest in 1988; and an unlawful possession of marijuana charge in 1989. All except the 1988 criminal sale conviction were misdemeanors. The two drug violations involved very small quantities of narcotics, consistent more with recreational use than distributive design. The law, federal and state, regards them, however, as serious, a class B felony for the criminal sale in 1988 warranting an indeterminate sentence of greater than a year, and a misdemeanor warranting a four-months' term of custody for the 1989 conviction.

The more important story, it seems to me, is the eleven-year span of time following the 1989 conviction of marijuana possession. Mr. Reynolds represented that he did not and does not use drugs, and the Probation Office reports that he is at "low risk for future substance abuse," indicating complete rehabilitation with regard to that aspect of his behavior. The Government contends, however, that Mr. Reynolds' traits of disorderly conduct persist, explaining its version of what the jury found by its verdict. Defendant denies the assertion, and suggests an alternative version how the verdict should be understood. In the absence of a *Fatico* hearing, *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), which neither side requested, and to the extent that the nature of defendant's possession and use of a firearm bear upon the sentence, I turn to the jury verdict and the evidence leading to it.

---

**1.** One juror fell ill during deliberations and was hospitalized. I excused the juror and ordered the remaining eleven to continue deliberations, pursuant to Federal Rule of Criminal Procedure 23(b).

█ In reviewing the record, I accept as true all material facts necessarily subsumed by the verdict, and all inferences from those facts. *Cf. United States v. Best,* 219 F.3d 192, 200 (2d Cir.2000); *United States v. Howard,* 214 F.3d 361, 363 (2d Cir.2000); *United States v. Moore,* 208 F.3d 411, 413 (2d Cir.2000). Thus considered, the evidence suggests that the complaining witness, David Hunter, became a tenant in one of Mr. Reynolds' buildings by misrepresenting that he, alone, would use his apartment, that he resisted leaving at the end of his term, that he was delinquent in paying rent and abiding by building rules, and that he broke promises to Mr. Reynolds in connection with vacating the apartment. An argument ensued—not the first between the two—and a gun was brandished. Each testified that it was the other who showed the gun, but the verdict of the jury in light of all the evidence must mean that it was Reynolds' gun, and that it was Reynolds who had possession of it in his apartment, packed in a case for that purpose, with ammunition stored separately in a separate case. Hunter testified that Reynolds pistol-whipped him, but Reynolds denied that he did so, and the evidence of his injury shown to "911" paramedics is inconclusive. Hunter's "911" call brought the police and the ambulance, leading to Reynolds' arrest.

From the evidence and the verdict of the jury, I find that Reynolds showed his gun to put Hunter in fear, and that it was his gun, not Hunter's. Presumably, Reynolds possessed the gun for protection, in light of the dangerous conditions in his neighborhood, particularly in relation to landlords' exposure when collecting rent often paid by tenants in cash, but Reynolds' desire for protection does not rise to a legal defense. Nor is self-help to avoid the long and expensive delays of the Bronx Housing Court. And, at least in the Second Circuit, the coming to rest of the gun in Reynolds' apartment does not affect the material fact that, at some earlier point and by some person, the gun was brought into New York State from some other state. *See United States v. Santiago,* 238 F.3d 213, 216–17 (2d Cir.2001); *United States v. Sorrentino,* 72 F.3d 294, 296 (2d Cir.1995). *Cf. United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 1754, 146 L.Ed.2d 658 (2000); *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

### *The Sentencing Guidelines and Their Application*

Section 2K2.1 of the Sentencing Guidelines prescribes the punishment level for unlawful possession of a firearm. The basic crime of unlawful possession, if not otherwise treated, is considered a level twelve offense. *See* Sentencing Guidelines § 2K2.1(a)(7). If the defendant was previously convicted of a felony punishable by a term greater than a year, the offense level jumps eight levels, to level twenty. *See* Sentencing Guidelines § 2K2.1(a)(4). Other levels are prescribed between twelve and twenty-six for other degrees of criminality with regard to firearm possession. The level twelve "catch-all" is provided for offenses not properly fitting into the other offense levels provided as gradations of Section 2K2.1.

Unlawful possession of a firearm is a serious offense. The obvious danger to society, a danger already too much in the news of high school and other random shootings, is exacerbated if the weapon is to be used for criminal activity. Hence, an arrest for weapons possession can frequently prevent more serious crimes.

█ Recidivism also poses substantial danger to society, for much serious crime is committed by those who have previously

been convicted of less serious crimes. Convicting a prior felon of unlawfully possessing a firearm and sentencing him more severely because of that status is another effective way to prevent more serious crime. Congress recognized that purpose by Section 922(g) of Title 18:

> It shall be unlawful for any person—
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition. . . .

As the Supreme Court observed:

> The obvious breadth of the language may well reflect the expansive legislative approach revealed by Congress' express findings and declarations . . . concerning the problem of firearm abuse by felons and certain specifically described persons.

*Lewis v. United States*, 445 U.S. 55, 61, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). Section 922(g) is also long-disabling in its effect, imposing a firearm possession disability upon the prior felon until his conviction is vacated or "the felon is relieved of his disability by some affirmative action, such as a qualifying pardon or a consent from the Secretary of the Treasury." *Lewis*, 445 U.S. at 60, 100 S.Ct. 915.

The Government correctly argues that defendant's fifteen year-old conviction, punishable by an indeterminate term of custody between one and three years satisfies 18 U.S.C. § 922(g) and Sentencing Guidelines § 2K2.1(a)(4). Defendant was apprehended for a criminal sale of $100 worth of cocaine on August 29, 1984, almost sixteen years before the gun incident of April 10, 2000 that brought on the instant conviction. But he was not sentenced until April 18, 1985 and his incarceration did not end until April 10, 1986, bringing him within the fifteen-year span that the Guidelines provide as the outer limit of consideration. *See* Sentencing Guidelines § 4A1.2(e)(1).[2] Because the term of incarceration to which he was sentenced, an indeterminate term of one to three years, imposes a "stated maximum" sentence of three years, it was a sentence "exceeding one year and one month" for purposes of offense level calculations. *See* Sentencing Guidelines § 4A1.2(e)(1), Application Note 2 ("For purposes of applying § 4A1.1(a), (b), or (c), the length of a sentence of imprisonment is the stated maximum . . . in the case of an indeterminate sentence of one to five years, the stated maximum is five years.")

■ That authority exists does not mean that it should be exercised. The Sentencing Guidelines, in presenting grids for calculating punishment, are not intended to transform the judge into an adding machine. It is an individual who is being sentenced, a human being created in the image of God. The sentence imposed by the judge must take into account all components of justice, reflecting the Sentencing Guidelines, the government's arguments and claims, and the particular considerations of the human being awaiting sentence—the crime he committed, his role in the community and his force for good, his history and prospects, and the like. As the Supreme Court held

---

**2.** *See* Sentencing Guidelines § 2K2.1, Application Note 5, incorporating, for purposes of the felon-in-possession statute, § 2K2.1(a)(4), and with regard to prior felonies involving crimes of violence or controlled substances, the fifteen-year limit for considering prior felony convictions in evaluating a defendant's criminal history. See Sentencing Guidelines §§ 4A1.1(a) & Application Note 1; 4A1.2(e)(1).

in *Koon v. United States,* 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996):

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

The Defendant, Merton Reynolds, is a hard-working man. His thirty-one tenants in a poor, drug-ravaged neighborhood depend on him for the upkeep of the buildings in which they live. The continuing viability of private apartment-ownership is important to the regeneration of the Bronx and to stem the tide of empty-lots and drug-trafficking that scourge so many of its neighborhoods, including Mr. Reynolds' own neighborhood. Mr. Reynolds thus reflects positive social and personal values to his neighborhood and to his aged parents.

Section 922(g) of Title 18 encompasses in its broad sweep all varieties of felon: those who have lived clear of crime following an old prior conviction, and those who display a recidivist bent because their prior convictions are recent; those whose prior felonies are relatively minor and those who committed more serious crimes; those who show an intent and purpose to use their weapon to commit crime and those who keep their weapon at home for defensive purposes; those who are apprehended with loaded weapons and those who keep their weapon and ammunition in separate storage.

The different gradations of culpability are not well-treated in the specific provisions of the Sentencing Guidelines. Appendix A of the 1999 Sentencing Guidelines, in effect at the time of defendant's crime but succeeded by the 2000 Guidelines effective November 1, 2000, provides that if an "atypical" case is presented and the indicated guideline is "inappropriate because of the particular conduct involved," the guideline section "most applicable to the nature of the offense conduct" should be used.

> In an atypical case, if the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant as convicted.

Sentencing Guidelines, Appendix A, Introduction, ¶ 1. Although the absence of this provision in the 2000 Guidelines gives rise to a degree of uncertainty as to the sentencing court's discretion to shift focus from one guideline to another in relation to particular conduct of an accused, the better view is that the sentencing court should have a limited degree of necessary flexibility and discretion where one facially applicable guideline points to a patently unjust result, and another related guideline more closely fits the conduct of the defendant before the court. *Compare United States v. Smith,* 186 F.3d 290, 300 (3d Cir.1999) and *United States v. Wong,* No. 399 Cr. 842, 2000 WL 1725056 at *2–3 (S.D.N.Y.2000) (Patterson, J.) (upholding such flexibility) *with United States v. Opran,* No. 00–1424, 2001 WL 138274 at *1 (2d Cir.2001) (unpublished opinion, rejecting application of different guideline).

Jumping eight levels of culpability, from level twelve to level twenty, to account for an unlawful firearm possession by a prior felon, represents an extraordinary step. But by sweeping together the almost-benign and the seriously malignant, it threatens a basic goal of the Guidelines,

to graduate punishment according to the seriousness of the crime, and then to account for appropriate adjustments and departures. *See* Sentencing Guidelines § 1A(2). *Cf.* 18 U.S.C. § 3553(a) (sentence should be "sufficient, but not greater than necessary" to serve the purposes of punishment).

It is much more fitting to consider that the applicable Guideline is not Section 2K2.1(a)(4)—the provision assigning level twenty to firearm possession by prior felons convicted of violent crimes or crimes involving narcotics—but Section 2K2.1(a)(7)—the provision assigning level twelve to defendants who do not fit appropriately under another specific guideline.

The Government argues that the only path permitted by the Guidelines when a prior conviction is old and overstates a defendant's criminality is to move horizontally on the sentencing grid provided by Section 5A of the Guidelines, from a higher to a lower category of criminal history points. *See* Sentencing Guidelines § 4A1.3. Here, the Government argues, Mr. Reynolds' fifteen year-old felony gives rise to three criminal history points. If that overstates criminality, the Government argues, my remedy is to adjust to a "neighboring" category, that is, criminal history II.[3]

■ A judge is not a calculating machine, and the sentencing grid is not a strait-jacket. Law must not be defied, and a judge is not free to refuse to apply a distasteful provision of the Sentencing Guidelines. *See, e.g., United States v. Shonubi,* 998 F.2d 84, 87–88 (2d Cir.1993)

(reversing district court's refusal to apply obstruction of justice enhancement despite specific findings supporting such enhancement). But neither should a judge neglect to apply a gradation in the Guidelines if doing so would more perfectly fit the punishment to the crime.

Subsection 7 of Section 2K2.1(a) is such a gradation. It more perfectly fits the offense of which Merton Reynolds was convicted. The type and character of his prior felony, the length of time that passed between its commission and his unlawful gun possession, his apparent purpose in keeping a gun for security and not as a means to commit crimes—all make appropriate the catch-all provision of section 2K2.1(a)(7) for an offense not fitting well in the other subsections of the Guidelines.

*Adjustment and Departures*

The transcript of sentencing on March 29, 2001 adequately explains my adjustment of Defendant's criminal history from category III to category II and my rejection of Defendant's arguments for departures. I sentenced Mr. Reynolds, at offense level twelve and criminal history category II, providing a range of twelve to eighteen months of custodial punishment, to fifteen months custody, followed by two years of supervised release. Additional terms of the sentence are as provided in the judgment.

SO ORDERED.

---

**3.** To quantify: At offense level twenty and criminal history category III, the indicated range of custodial punishment is forty-one to fifty-one months; at criminal history category II, thirty-seven to forty-six months. At offense level twelve, criminal history category III, the indicated range is fifteen to twenty-one months; at criminal history II, twelve to eighteen months. The grid is excerpted below:

| Level | Crim. Hist. I | Crim. Hist. II | Crim. Hist. III |
| --- | --- | --- | --- |
| 20 | 33–41 | 37–46 | 41–51 |
| 12 | 10–16 | 12–18 | 15–21 |