**UNITED STATES of America,
Appellee–Cross–Appellant,**

v.

**Merton REYNOLDS, Defendant–
Appellant–Cross–Appellee.**

**Nos. 01–1202L, 01–1253XAP.**

United States Court of Appeals,
Second Circuit.

Nov. 20, 2001.

Andrew C. DeVore, Assistant United States Attorney for the Southern District of New York; Mary Jo White, United States Attorney, David Raymond Lewis, Assistant United States Attorney, on the brief, New York, NY, for appellee.

Randall D. Unger; Harvey J. Slovis, on the brief, Bronx, NY, for defendant-appellant.

Present MINER, STRAUB and PARKER, Circuit Judges.

### SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of conviction entered by the District Court is AFFIRMED; it is further ORDERED, ADJUDGED AND DECREED that the Appellant's sentence is VACATED and the case REMANDED for resentencing.

Defendant–Appellant Merton Reynolds appeals from a judgment of conviction entered on April 19, 2001, in the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) for possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g). The United States cross-appeals for review of Mr. Reynolds' sentence. After review, we conclude that Mr. Reynolds was properly convicted and thus affirm his conviction; however, because the District Court applied an improper provision of the Sentencing Guidelines, we vacate Mr. Reynolds' sentence and remand for resentencing.

### FACTUAL AND PROCEDURAL BACKGROUND

Mr. Reynolds was convicted of a single count of possessing a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g). Mr. Reynolds owns and maintains three apartment buildings in the northwest area of the Bronx. On April 10, 2000, he was arrested following an altercation with a tenant, David Hunter. Mr. Hunter claimed that Mr. Reynolds assaulted him with a handgun, striking him in the face with the gun after a dispute about Mr. Hunter's failure to vacate the apartment. Mr. Reynolds denies striking Mr. Hunter and claimed at trial that the handgun was actually Mr. Hunter's, and that he took the gun from Mr. Hunter in self-defense. After a three-day trial and three days of deliberation, the jury convicted Mr. Reynolds of possession of a handgun in violation of 18 U.S.C. § 922(g), which prohibits persons previously convicted of a felony from possessing handguns. As a predicate offense for this conviction, the government proffered a certified copy of a judgment of conviction showing that in 1985 Mr. Reynolds pled guilty to criminal sale of a controlled substance in the third degree.

In sentencing Mr. Reynolds, the District Court applied U.S.S.G. § 2K2.1(a)(7) of the Sentencing Guidelines which applies to offenses for unlawful possession of firearms but does not carry an enhancement for the prior felony conviction. Mr. Reynolds was sentenced to a term of imprisonment of 15

months, followed by two years of supervised release.

## DISCUSSION

### I. Mr. Reynolds' Conviction

■ Mr. Reynolds raises three claims attacking his conviction. First, he contends that the government deprived him of his Fifth Amendment right against self-incrimination when it referred to the fact that Mr. Reynolds failed to speak at the time of his arrest. During cross-examination, the Assistant United States Attorney inquired why Mr. Reynolds failed to claim at the time of his arrest—as he did at trial—that the gun was not his but was taken from Hunter in self-defense. This line of inquiry followed an opening statement in which Mr. Reynolds claimed that police officers prevented him from telling his story at the time of his arrest and direct testimony from Mr. Reynolds to the same effect. Thus, as Mr. Reynolds placed his post-arrest actions and silence at issue, he cannot now claim his constitutional rights were violated when the government sought to cross-examine him on that issue. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91., 619 n. 11 (1976); *Leecan v. Lopes,* 893 F.2d 1434, 1441 (2d Cir.), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990). Moreover, as Mr. Reynolds had received no assurances from the government that his silence would not be used against him, reference by the government to his post-arrest silence in cross-examination or in summation does not implicate his due process rights. *See Fletcher v. Weir,* 455 U.S. 603, 607, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) ("In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand.").

■ Mr. Reynolds' next claim is that he was deprived of a fair trial because Mr. Hunter testified with a Jamaican accent which might have been difficult for jurors to understand. Because Mr. Reynolds failed to contend at trial that Mr. Hunter's testimony was not sufficiently clear, we review for plain error, which will be found only "in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotations omitted). Here, the record reveals, *inter alia,* that the court actively intervened to ensure the clarity of Mr. Hunter's testimony and provided a written transcript throughout the jurors' deliberations. Thus, there is no reason to suspect that jural difficulty with Mr. Hunter's testimony so undermined the fairness of the proceeding that a new trial is warranted.

Finally, Mr. Reynolds' third claim—that the trial judge displayed such antipathy to his counsel that the fairness of the trial was undermined—is without merit. Accordingly, having reviewed Reynolds' claims on appeal and finding no basis for ordering a new trial, we affirm the judgment of conviction entered against Mr. Reynolds.

### II. Mr. Reynolds' Sentence

■ The United States cross-appeals, requesting that we vacate the sentence imposed by the District Court. In sentencing Mr. Reynolds, the court issued a written Memorandum and Order of Sentencing, setting forth the bases upon which Mr. Reynolds' sentence was calculated. The court applied § 2K2.1(a)(7), a provision which applies to persons convicted of firearm offenses, but who have no prior convictions. The court, however, recognized that Mr. Reynolds' 1985 conviction for a drug offense was a "controlled sub-

stance offense," which qualified him for sentencing under § 2K2.1(a)(4)(A) of the Guidelines. Had that section been applied, Mr. Reynolds would have qualified for a base offense level of 20 rather than the level 12 actually applied. The court recognized that § 2K2.1(a)(4)(A) was dictated by the Guidelines, but refused to apply it, finding that justice required application of a more lenient sentencing provision. The court wrote:

> The Government correctly argues that defendant's fifteen year-old conviction, punishable by an indeterminate term of custody between one and three years satisfies 18 U.S.C. § 922(g) and Sentencing Guidelines § 2K2.1(a)(4).... The Defendant, Merton Reynolds, is a hardworking man. His thirty-one tenants in a poor, drug-ravaged neighborhood depend on him for the upkeep of the buildings in which they live.... The different gradations of culpability are not well-treated in the specific provisions of the Sentencing Guidelines.... Jumping eight levels of culpability, from level twelve to level twenty, to account for an unlawful firearm possession by a prior felon, represents an extraordinary step. But by sweeping together the almost-benign and the seriously malignant, it threatens a basic goal of the Guidelines, to graduate punishment according to the seriousness of the crime, and then to account for appropriate adjustments and departures.... A judge is not a calculating machine, and the sentencing grid is not a strait-jacket. Law must not be defied, and a judge is not free to refuse to apply a distasteful provision of the Sentencing Guidelines. But neither should a judge neglect to apply a gradation in the Guidelines if doing so would more perfectly fit the punishment to the crime. Subsection 7 of Section 2K2.1(a) is such a gradation. It more perfectly fits the offense of which Merton Reynolds was convicted. The type and char-

acter of his prior felony, the length of time that passed between its commission and his unlawful gun possession, his apparent purpose in keeping a gun for security and not as a means to commit crimes—all make appropriate the catch-all provision of [S]ection 2K2.1(a)(7) for an offense not fitting well in the other subsections of the Guidelines.

*United States v. Reynolds,* 2001 WL 396439 at *2–5 (S.D.N.Y. April 19, 2001) (internal citations omitted). The court also adjusted Mr. Reynolds' criminal history from category III to category II for the same reasons and rejected Mr. Reynolds' requested departures.

While we find much to agree with in the District Court's general sentiments regarding the inflexibility of the Guidelines, we cannot let stand the District Court's patent rejection of the appropriate Guideline provisions. "[T]he Guidelines, having the force and effect of law, are to be construed as if they were a statute." *United States v. Kirvan,* 86 F.3d 309, 311 (2d Cir.1996). A district court has no authority to disregard or fail to apply a Guideline provision, even if it believes that they dictate an unjust result. *See United States v. Shonubi,* 998 F.2d 84, 87–88 (2d Cir.1993). As we stated in *United States v. Koczuk,* 252 F.3d 91, 95 (2d Cir.2001), "dissatisfaction with the available sentencing range or a preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range." (quoting U.S.S.G. § 5K2.0, comment). To the extent that the District Court believed that the Guidelines overemphasized Reynolds' criminal history, the court had the ability to reduce Reynolds' criminal history category. The court appropriately exercised that authority, and by doing so mitigated Mr. Reynolds' sentence. The government does not contest the horizontal departure to reduce Mr. Reynolds' criminal history category.

In short, the unambiguous and binding language of the Guidelines dictates that Mr. Reynolds' sentence be controlled by § 2K2.1(a)(4)(A). The District Court cannot refuse to apply this provision. We thus vacate Mr. Reynolds' sentence and remand so that the District Court may resentence Mr. Reynolds in accordance with this Order. Although the court previously denied Mr. Reynolds' departure requests, the court is free to reconsider its decision upon remand. We express no view on whether vertical departures or further adjusting Mr. Reynolds' criminal history category may be appropriate.