**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 21, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

DAVID GARY METZENER,

     Defendant-Appellant.

No. 09-1182

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:02-CR-00305-WYD-01)**

---

Vicki Mandell-King, Assistant Federal Public Defender, (Raymond P. Moore, Federal Public Defender, Denver, CO, with her on the brief) for Defendant-Appellant David Gary Metzener.

Michael C. Johnson, Assistant United States Attorney, (David M. Gaouette, Acting United States Attorney, Denver, CO, with him on the brief) for Plaintiff-Appellee United States of America.

---

Before **KELLY, EBEL,** and **TYMKOVICH,** Circuit Judges.

---

**EBEL**, Circuit Judge.

---

On January 14, 2003, Defendant-Appellant David Gary Metzener pleaded guilty to knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). Mr. Metzener was sentenced to thirty-three months imprisonment to be followed by a three-year term of supervised release. As a condition of his supervision, the court required him to "participate in an approved program of sex offender evaluation and treatment, which may include polygraph and plethysmograph examinations, as directed by the probation officer." Mr. Metzener apparently complied with this condition throughout most of his term of supervised release.

On February 6, 2009, however, just four days before his supervised release was set to expire, Mr. Metzener failed a polygraph examination, and admitted to engaging in several activities that were not permitted by his sex offender treatment provider. Three days later, Mr. Metzener's probation officer obtained an arrest warrant from the district court on the ground that Mr. Metzener had "fail[ed] to participate in an approved program of sex offender evaluation and treatment as directed by the probation officer." At a hearing on April 15, 2009, the district court agreed, and concluded that Mr. Metzener had violated his supervised release by failing to "participate" in the sex offender treatment program. The court sentenced him to an additional twelve months of supervised release, including continuing treatment in the sex offender program. Mr. Metzener appeals this sentence, arguing that he did in fact "participate" in the program as required by the terms of his supervised release. We conclude that the district court did not abuse its discretion when it interpreted the word "participate," and therefore affirm.

-2-

## I. BACKGROUND

The facts in this appeal are not in dispute. In August 2002, Mr. Metzener was charged with fourteen counts of knowingly transporting child pornography in interstate or foreign commerce, in violation of 18 U.S.C. § 2252A(a)(1), and one count of knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). Mr. Metzener reached a plea agreement with the government, agreeing to plead guilty to the one count of knowingly receiving child pornography. On September 9, 2003, the district court sentenced Mr. Metzener to thirty-three months in prison, to be followed by a period of supervised release of three years. In addition to standard conditions of supervised release, the court imposed two additional conditions of supervision: that Mr. Metzener participate in mental health treatment, and that he participate in sex offender treatment. This second condition, the one at issue in this appeal, stated:

> The defendant shall participate in an approved program of sex offender evaluation and treatment, which may include polygraph and plethysmograph[1] examinations, as directed by the probation officer. The defendant shall pay the cost of treatment as directed by the probation officer. The Court authorizes the probation officer to release psychological reports and/or the presentence report to the treatment agency for continuity of treatment.

(Doc. No. 34, R. Vol. 1 (footnote added).) On February 10, 2006, Mr. Metzener completed his period of incarceration and began his three-year period of supervised release.

---

[1] A plethysmograph is a device that measures changes in volume within a bodily organ, and can be used to monitor an individual's sexual arousal.

The Probation Office referred Mr. Metzener to Redirecting Sexual Aggression (RSA), a sex offender treatment provider, and he began sex offender treatment on March 8, 2006. RSA required Mr. Metzener to sign its Adult Offender Treatment Contract (the "contract"). The contract imposed a number of restrictions on Mr. Metzener's conduct, including prohibiting access to the Internet, and the possession or viewing of "<u>any</u> pornographic, sexually oriented, or sexually stimulating materials." (R. Vol. 2 at 27 (emphasis in contract)). The contract also required Mr. Metzener to attend both group and individual therapy sessions. Under the terms of the contract, Mr. Metzener was required to complete periodic polygraph and plethysmograph tests, as well as to "be completely honest during all treatment sessions and assume full responsibility" for his conduct. (<u>Id.</u> at 29.)

The treatment program required Mr. Metzener to progress through six phases of treatment to develop and apply skills designed to eliminate sexually inappropriate behavior. Amber Gulley, Mr. Metzener's therapist at RSA from 2007 through 2009, stated that Mr. Metzener was "absolutely" doing well in the program until his February 2009 polygraph. Mr. Metzener was required to take somewhere between ten and seventeen polygraphs throughout the course of his treatment. Some of these polygraphs produced inconclusive evidence as to whether Mr. Metzener was being truthful. When this would occur, Mr. Metzener would work with his treatment team, discussing any previously undisclosed information. After these sessions with his treatment team, Mr. Metzener would then take another polygraph, and he always responded truthfully to all

-4-

questions on these retests.

Both Ms. Gulley and Garrett Pfalmer, Mr. Metzener's parole officer, conceded that Mr. Metzener had progressed through the entire program and had completed every program requirement except for the final requirement. Although not in the contract, the Sex Offender Management Board, a Colorado agency that establishes guidelines for sex offender treatment programs, requires an individual to provide two consecutive polygraphs that are both "clean"—meaning that the individual provides no information during the polygraph itself, or in interviews with the polygrapher made before and after the examination, that the treatment team was not previously aware of—and non-deceptive in order to successfully complete the program. According to Ms. Gulley, Mr. Metzener knew of this requirement, and had provided one non-deceptive polygraph by the end of January 2009.

On January 30, 2009, Mr. Metzener failed to show up for the second and final polygraph exam required to complete the program. Ms. Gulley informed him that he needed to complete this second polygraph in order to complete the RSA treatment program. On February 4, Mr. Pfalmer went to Mr. Metzener's home and told him "basically that a final polygraph was necessary for him to complete the program and that we would need to schedule one prior to his expiration date." (Tr. at 30, R. Vol. 3.) Mr. Metzener asked what would happen if he failed that test. Mr. Pfalmer asked why he thought he would fail, and Mr. Metzener replied by saying he thought he would be too nervous. Mr. Metzener nevertheless agreed to take the test on the afternoon of February 6.

The February 6 polygraph produced a deceptive response. Mr. Metzener then disclosed to the polygraph administrator that he had engaged in several activities barred by the RSA treatment contract. Specifically, he admitted to watching R-rated movies that contained nudity, frequenting the library and using the computer there without approval from his treatment team, use of his home computer without approval, looking at a picture of a nude woman on his friend's phone, and visiting a dating site on the Internet, during which time he also saw a picture of a nude woman. Mr. Metzener had not previously disclosed this information to Ms. Gulley or anyone else on his treatment team. None of the conduct at issue concerned child pornography, but Ms. Gulley explained that Mr. Metzener transitioned to child pornography once adult pornography was no longer stimulating enough. According to Ms. Gulley, Mr. Metzener himself acknowledged during his treatment that adult pornography was a "stepping stone" to his viewing of child pornography. In addition, when Ms. Gulley shared this information with Mr. Metzener's wife, she told Ms. Gulley that she found sexually explicit text messages on Mr. Metzener's phone that he had sent to another woman. Ms. Gulley stated that this was also "consistent with David's offending behaviors" because "[p]rior to viewing child pornography, he had engaged in infidelity behaviors." (Id. at 92.)

On February 9, 2009, the day before Mr. Metzener's term of supervised release was set to expire, his probation officer sought and obtained an arrest warrant from the district court on the ground that Mr. Metzener had violated the terms of his supervised release by "fail[ing] to participate in an approved program of sex offender evaluation and

treatment as directed by the probation officer."[2] (Sup. Rel. Viol. Rep. at 2.) Mr. Metzener ultimately spent five days in jail before a magistrate judge released him on bond. The district court held a supervised release revocation hearing on April 15, 2009, at which both Mr. Pfalmer and Ms. Gulley testified.

The district court stated that Mr. Metzener "did fail to participate in an approved program of sex offender evaluation, because he didn't complete it." (Tr. at 133, R. Vol. 3.) The court expressed concern not only over the underlying conduct, but over the fact that he did not tell Ms. Gulley about the conduct, because "keeping secrets leads one to believe that he could be reverting back to behavior that is troublesome." (Id. at 136-37.) The court also read into the record an excerpt from the Supervised Release Violation Report, which stated that "while he did participate in an approved program of sex offender evaluation and treatment, when he believed that his treatment accountability was over, he failed to comply with the rules and restrictions specified by the treatment agency." (Id. at 146.) The court emphasized that its ruling "isn't premised on him not passing the polygraph test in and of itself. Because I think if that were the only issue, I might have a different result. But I have to look, as I said earlier, at the totality of the fact pattern." (Id. at 147.)

---

[2] The Supervised Release Violation Report also alleged that he had made a false statement to his probation officer when he said he feared that he would fail the polygraph examination because he was nervous. The district court dismissed that charge at the revocation hearing, however, finding "the record [] inadequate to support that." (Tr. at 154, R. Vol. 3.) The government does not appeal the dismissal.

The court noted that

> the goal here is to ensure that this defendant . . . ceases and desists from behavior of the kind that's been described in the testimony here today and that he demonstrate that he has, in effect, completed the treatment program that has been authorized by the Court . . . .

(Id. at 151.)  The court further stated that it is in Mr. Metzener's best interest to receive further treatment and that the court has "an obligation to protect the public and be fair to the defendant."  (Id. at 133.)  The district court therefore revoked Mr. Metzener's term of supervised release and sentenced him to time served.  The court also sentenced him to twelve additional months of supervised release, subject to the same condition, requiring participation in a sex offender treatment and evaluation program.  Mr. Metzener now appeals the twelve-month sentence of supervised release, contending that he did in fact "participate in an approved program of sex offender evaluation and treatment."

## II.    DISCUSSION

District courts are permitted to revoke a term of supervised release "if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release."  18 U.S.C. § 3583(e)(3).  After revocation and ordering the defendant "to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment."  Id. § 3583(h). Here, Mr. Metzener was sentenced to time already served and then placed on supervised release for an additional twelve months, subject to the same special condition of supervised release that required him to participate in a sex offender treatment program.

-8-

This court reviews a district court's decision to revoke a term of supervised release for abuse of discretion. United States v. Hammonds, 370 F.3d 1032, 1034 (10th Cir. 2004). We have jurisdiction under 28 U.S.C. § 1291, and affirm.

Mr. Metzener makes only one argument on appeal: that he satisfied the term of his supervised release requiring him to "participate in an approved program of sex offender evaluation and treatment, which may include polygraph and plethysmograph evaluations, as directed by the probation officer." Mr. Metzener does not argue that this term of supervised release is unconstitutionally vague, and we do not address that question. Turrentine v. Mullin, 390 F.3d 1181, 1200 n.2 (10th Cir. 2004) ("[S]ince [Plaintiff] has not advanced this argument, we need not address it.").

This appeal thus turns solely on the proper interpretation of the word "participate." We do not write on a blank slate in determining how to interpret "participate," however. Instead, we consider only whether the district court abused its discretion in its interpretation of that word. See Hammonds, 370 F.3d at 1034 ("We review orders revoking supervised release for an abuse of discretion."). "A court abuses its discretion only 'when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment.'" Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1156 (10th Cir. 2007) (quoting United States v. Nickl, 427 F.3d 1286, 1300 (10th Cir. 2005)). Accordingly, the district court's interpretation of "participate" needs to be reasonable, but it does not need to be the only reasonable, or even the most reasonable, interpretation.

-9-

See Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 594 (2007) (equating "familiar abuse-of-discretion standard" to a review for "reasonableness").

With this standard in mind, we consider the district court's interpretation of the word "participate." While the court did not explicitly define the word "participate," it appears from the record that the court essentially required substantial participation throughout the entire three-year term of supervised release. The court repeatedly emphasized that its decision to revoke Mr. Metzener's probation was based on the "totality of the fact pattern," including the deceptive polygraph, the underlying noncompliant behavior,[3] the lack of honesty with his treatment team, and the exchange of sexually explicit text messages with another woman. If there were only minor deviations from the program requirements, the court may have concluded that Mr. Metzener had participated, even if those deviations prevented him from completing the program. Indeed, the court stated, if his failure to pass the final polygraph "were the only issue, I might have a different result," even though successful completion of the polygraph was a condition of completing the RSA program.[4] Therefore, while the district court applied a

---

[3] Mr. Metzener does not argue on appeal that the district court's reliance on the RSA treatment contract was an improper delegation of judicial authority. See United States v. Davis, 151 F.3d 1304, 1306 (10th Cir. 1998) (recognizing that a court's delegation of authority to the probation officer is subject to "constitutional restraints"). Although he raised the argument below, Mr. Metzener specifically disclaimed it here, and so we do not address it. Turrentine, 390 F.3d at 1200 n.2.

[4] The district court did state during the revocation hearing that Mr. Metzener "did fail to participate in an approved program of sex offender evaluation, because he didn't complete it." (Tr. at 133, R. Vol. 3.) The court made this statement prior to formally

Continued . . .

-10-

high standard for "participation," it did not apparently require 100% "successful completion."

Although Mr. Metzener complained he could not have known what was expected of him to "participate in an approved program of sex offender evaluation and treatment, which may include polygraph and plethysmograph examinations, as directed by the probation officer," the meaning surely became clear when the probation officer directed him to participate in a program administered by RSA and, as a condition to participate in the RSA program, Mr. Metzener was required to sign a contract. Without signing the contract, Mr. Metzener would not have been allowed to participate in the RSA program. Had Mr. Metzener announced he would not comply with some of those conditions, doubtless his "participation" in the RSA program would have been denied. So, the contract clearly set forth the conditions for his "participation" in the RSA program.

Among the contract provisions were very explicit prohibitions against "access to the Internet" and possession or viewing of "<u>any</u> pornographic, sexually oriented, or sexually stimulating materials," and requirements "to be completely honest" and to "assume full responsibility for his conduct." (R. Vol. 2 at 27, 29.) Thus, the conditions of his participation were set forth explicitly, with considerable detail. He breached a

_____

announcing its ruling, however, and the court's subsequent statements—including that it "might have a different result" if the deceptive polygraph was the only issue—make clear that the court was not actually requiring completion of the program.

-11-

number of these conditions, which ultimately precluded his continued participation in the RSA program during the term of his supervised release.

This decision of the district court, that, under the "totality of the fact pattern," Mr. Metzener violated the conditions of his supervised release, does not strike us as "a clear error of judgment" or as otherwise unreasonable. Eastman, 493 F.3d at 1156 (quoting Nickl, 427 F.3d at 1300). In part, this is because no other interpretation of the word "participate" is clearly more reasonable than the district court's interpretation. The dictionary provides another possible interpretation of the word "participate," which it defines to mean "to take or have a part." Random House College Dictionary 969 (Rev. ed. 1980). This definition potentially supports an extremely minimal interpretation of Mr. Metzener's requisite participation—if he had attended just one meeting over three years, he took some part in the treatment program. Mr. Metzener concedes, however, that such a minimal interpretation does not apply, and that more participation than that was required. Mr. Metzener has proposed at least two other interpretations of "participate." In his brief, Mr. Metzener suggests that "participate" means to "actively participate[] in and substantially compl[y] with the treatment program." (Apt.'s Br. at 18.) In arguing that he met this standard, Mr. Metzener pointed to the undisputed progress he made throughout the first two and a half years of the program. According to Mr. Metzener, the violations he committed at the end of his treatment program should be viewed as a relapse and considered in the context of his progress throughout the program. At oral argument, Mr. Metzener's attorney also suggested that good-faith participation is

-12-

the standard, and that Mr. Metzener met this standard by progressing through the program for nearly three full years.

However reasonable Mr. Metzener's interpretations of the word "participate" may be, they do not undermine the reasonableness of the district court's interpretation that "participate" required substantial compliance for the entire three-year term of supervised release. Mr. Metzener has thus failed to show that the district court abused its discretion. Mr. Metzener cannot even show that his proposed modifiers for "participate"— substantial participation and good-faith participation—are in any way superior to the district court's modification of "participation," let alone that the district court's interpretation was unreasonable. On our review for abuse of discretion, whether the district court's interpretation was reasonable is the sole question, even if we might interpret the word differently. See Eastman, 493 F.3d at 1156.

We also note that the rule of lenity has no applicability here. When confronted with an ambiguous criminal statute, the "rule of lenity instructs courts to interpret" those statutes "in favor of the accused." United States v. Serawop, 505 F.3d 1112, 1121 (10th Cir. 2007). The rule of lenity is a principle of statutory construction, however, and here we are confronted with a term of supervised release imposed by a court order. As the Sixth Circuit recently observed when confronted with a similar situation,

> Courts apply the rule of lenity to resolve ambiguities in favor of a
> defendant when a criminal statutory term is ambiguous and cannot be
> clarified by the statute's history or structure. Appellant cites no authority
> for the proposition that the rule of lenity may be applied to resolve
> ambiguity in a judgment or order.

-13-

United States v. Booth, 551 F.3d 535, 541 (6th Cir. 2009) (internal citation omitted) (emphasis in original); see also Bifulco v. United States, 447 U.S. 381, 387 (1980) ("The Court has emphasized that the 'touchstone' of the rule of lenity 'is statutory ambiguity'" (quoting Lewis v. United States, 445 U.S. 55, 65 (1980))); United States v. DeGasso, 369 F.3d 1139, 1154 n.2 (10th Cir. 2004) (referring to the rule of lenity as "the canon of strict construction of criminal statutes" (quoting United States v. Lanier, 520 U.S. 259, 266 (1997)) (emphasis added)). The rule of lenity therefore has no applicability to this situation.

While we hold that it was not an abuse of discretion for the district court to interpret the word "participate" in the manner that it did, we hasten to add that this entire appeal would likely have been unnecessary if the court had more precisely written the term of supervised release at issue. The district court presumably drew upon the Sentencing Guidelines in crafting this term, as the Guidelines recommend imposing on sex offenders a "condition requiring the defendant to participate in a program approved by the United States Probation Office for the treatment and monitoring of sex offenders." USSG § 5D1.3(d)(7)(A). Despite the use of the word "participate" in the Sentencing Guidelines, we believe that defendants would have better notice of what is required of them, and justice would be better served, if district courts more clearly stated the requirements of participation. For instance, courts have crafted terms of supervised release that require the defendant to "participate in and successfully complete" a

treatment program, see United States v. Kreitinger, 576 F.3d 500, 505 (8th Cir. 2009), or to "participate in a mental health program specializing in sexual offender treatment approved by the probation officer, and abide by the rules, requirements and conditions of the treatment program," see United States v. Taylor, 338 F.3d 1280, 1283 (11th Cir. 2003).  We therefore strongly encourage district courts to be more specific as to the amount of participation they require when imposing a term of supervised release, and whether they are in fact requiring successful completion of such a program.

## III.   CONCLUSION

For the reasons stated above, we AFFIRM the revocation and reinstitution of Mr. Metzener's supervised release.