**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 4, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ANTONIO MOLINA-CHAVEZ, a/k/a
Antonio Chavez, a/k/a Vicente de la
Cruz-Cabrera, a/k/a Vicente dela
Cruz-Cabrera, a/k/a Antonio Molina,

Defendant-Appellant.

Nos. 11-5056 & 11-5057
(D.C. Nos. 4:10-CR-00187-CVE-1 &
4:10-CR-00197-CVE-1)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

---

In 2009, defendant Antonio Molina-Chavez pled guilty in the District of

New Mexico to illegally reentering the United States. *See* 8 U.S.C. § 1326(a).

The United States District Court for the District of New Mexico sentenced him to

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

eight months in prison for this offense, to be followed by a two-year term of supervised release. In November 2009, he completed his prison term and the Department of Homeland Security removed him to Mexico.

A year later, before his supervised release term had expired, Mr. Molina-Chavez was arrested in Tulsa, Oklahoma on a public intoxication charge. This arrest had two consequences relevant here. First, Mr. Molina-Chavez was charged in federal court with illegally reentering the United States. He pled guilty to that charge and was sentenced by the United States District Court for the Northern District of Oklahoma to ten months' incarceration. The district court subsequently denied his motion to withdraw his guilty plea. Second, the district court revoked his 2009 supervised release and sentenced him to an additional five months in prison, to be served concurrently with the ten-month sentence on the illegal reentry charge.

On appeal from both convictions, Mr. Molina-Chavez argues that the Northern District of Oklahoma court should have (1) permitted him to withdraw his guilty plea, and (2) dismissed the order revoking his supervised release. He contends that ambiguities in his 2009 New Mexico sentence provided him with authorization to reenter the United States legally. We disagree, and therefore affirm the district court's judgment and sentence for illegal reentry. We dismiss Mr. Molina-Chavez's appeal concerning revocation of his supervised release as moot.

**BACKGROUND**

Mr. Molina-Chavez's 2009 sentence, entered in Case No. 2:09CR01574-001BB in the District of New Mexico, included terms and conditions of supervised release that he characterizes as ambiguous. First, it provided that "[u]pon release from imprisonment, [Mr. Molina-Chavez] shall be on supervised release for a term of 2 years unsupervised." Supp. R. at 11. It further provided that he "must not reenter the United States without legal authorization." *Id.* at 12. The supervised release terms also required him to "report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons." *Id.* at 11. Thereafter, he was to "report to the probation officer and . . . submit a truthful and complete written report within the first five days of each month." *Id.* And he was forbidden from "leav[ing] the judicial district without the permission of the court or probation officer." *Id.*

Mr. Molina-Chavez was removed to Mexico on November 20, 2009, after serving the custodial portion of his sentence. On October 29, 2010, prior to expiration of his two-year supervised release term, an officer of the Tulsa Police Department arrested him for public intoxication in Tulsa. As a result of this incident, the Federal Probation Office filed a petition seeking revocation of his supervised release, alleging that he had violated its terms both by reentering the country and by committing the crime of public intoxication. Jurisdiction over the

term of supervised release was transferred to the Northern District of Oklahoma. The case was filed in that district and assigned No. 10-CR-197-CVE.

In the meantime, Mr. Molina-Chavez was also named in an indictment in the Northern District of Oklahoma (No. 10-CR-187-CVE), alleging that he had been found in the United States without permission after having been previously removed from this country. *See* 8 U.S.C. § 1326(a). This indictment was also based upon his arrest and confinement in the Tulsa incident. On January 11, 2011, he pled guilty to the indictment. About two months later, Mr. Molina-Chavez moved to withdraw his guilty plea, alleging that he was "legally innocent" of the offense charged. The district court denied his motion.

On February 28, 2011, the Probation Office filed an Order seeking revocation of Mr. Molina-Chavez's Supervised Release in No. 10-CR-197-CVE. On March 10, 2011, the district court denied his motion to dismiss this Order. On March 18 it found him in violation of the terms of his supervised release.

The district court then consolidated the two offenses for sentencing purposes. It sentenced Mr. Molina-Chavez to ten months for the unlawful reentry offense in No. 10-CR-187-CVE, and five months on revocation of supervised release in No. 10-CR-197-CVE, to run concurrently with the ten-month sentence. His appeals from his sentences have been consolidated for purposes of appellate disposition.

## ANALYSIS

### 1.  No. 11-5056 (Unlawful Reentry)

A defendant may withdraw a guilty plea before sentencing if he "can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  Courts consider seven factors to determine if the defendant has satisfied that burden: "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources."  *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993).  This court reviews the district court's denial of a motion to withdraw a guilty plea for an abuse of discretion.  *United States v. Wade*, 940 F.2d 1375, 1376 (10th Cir. 1991). "Although a motion to withdraw a plea prior to sentencing should be freely allowed, we will not reverse a district court's decision unless the defendant can show that the court acted unjustly or unfairly."  *United States v. Hamilton*, 510 F.3d 1209, 1213-14 (10th Cir. 2007) (quotations omitted).

In denying Mr. Molina-Chavez's motion, the district court relied primarily on the first and third factors listed above:  assertion of innocence and timeliness. In challenging the district court's disposition, he now argues that he is legally innocent of unlawfully reentering the United States and therefore has a fair and just reason to withdraw his guilty plea.  He further contends that his motion was

timely because his counsel was unaware of this legal argument until after his probation officer gave counsel a copy of the Order on Supervised Release on March 1, 2011. Counsel filed his motion to withdraw the guilty plea two days later.

### A. Legal Innocence

Mr. Molina-Chavez bases his legal innocence claim on alleged ambiguities in the terms of his 2009 supervised release, coupled with an assertion that the rule of lenity applies to those terms. At the outset, we must consider whether the rule of lenity applies. "When confronted with an ambiguous criminal statute, the rule of lenity instructs courts to interpret those statutes in favor of the accused." *United States v. Metzener*, 584 F.3d 928, 934 (10th Cir. 2009) (quotation omitted). The rule of lenity is a principle of statutory construction, however, and this court has specifically held that it is not applicable to the construction of an order of supervised release. *See id.*[1] Mr. Molina-Chavez's argument that the rule

---

[1] Mr. Molina-Chavez contends that since *Metzener*, we have adopted a broader role for the rule of lenity, citing *United States v. Huyoa-Jimenez*, 623 F.3d 1320, 1323 n.3 (10th Cir. 2010). In *Huyoa-Jimenez*, however, we merely stated that certain provisions of the Federal Sentencing Guidelines were not so ambiguous as to require application of the rule of lenity. In that case, we did not actually apply the rule of lenity to the Guideline sections in question. In any event, the Guidelines resemble criminal statutes much more closely than do the terms of a supervised release order. Moreover, nothing in *Huyoa-Jimenez* suggests an intention to overrule the more specific rule in *Metzener*.

of lenity should apply to the supervised release terms and conditions in his 2009 sentence therefore fails as a matter of law.

This is not the end of our analysis, however. The broader issue before us is whether the district court correctly rejected Mr. Molina-Chavez's claim of legal innocence based on alleged ambiguities in the supervised release terms. *See id.* (reviewing district court's construction of supervised release terms after rejecting application of rule of lenity). We conclude that it did.

Mr. Molina-Chavez argues that the 2009 conditions of supervised release provided him with "prior authorization" to reenter the United States, thus rebutting an essential element of the crime of unlawful reentry. Aplt. Opening Br. at 27. Although the supervised release order prohibited him from reentering the United States, it also required him to remain within the District of New Mexico and to report to his probation officer there. Thus, Mr. Molina-Chavez contends that the order contains an ambiguity concerning whether he had permission to be in the United States. This ambiguity, he argues, is fatal to his prosecution for unlawful reentry. But this argument clearly fails. We agree with the district court that the terms and conditions did not create an ambiguity that makes Mr. Molina-Chavez legally innocent of the crime to which he pled guilty.

The special conditions of supervision informed Mr. Molina-Chavez that he "must not reenter the United States without legal authorization." Supp. R. at 12. The illegal reentry statute requires that the Attorney General expressly

consent to an alien's reapplication for admission. 8 U.S.C. § 1326(a)(2).[2]

Mr. Molina-Chavez has failed to establish that the standard terms and conditions prohibiting him from departing from the judicial district and requiring him to report to his probation officer in the United States provided such express consent.[3] But even if these conditions somehow created an ambiguity concerning

---

[2] "On March 1, 2003, the Immigration and Naturalization Service ceased to exist as an agency within the Department of Justice, and its enforcement functions were transferred to the Department of Homeland Security." *United States v. Sandoval*, 390 F.3d 1294, 1296 n.2 (10th Cir. 2004). The Secretary of Homeland Security is therefore the appropriate official to grant consent under § 1326(a)(2), and the reference to the Attorney General in that statute is deemed to refer to the Secretary. *See United States v. Palomino Garcia*, 606 F.3d 1317, 1323 n.6 (11th Cir. 2010).

[3] In the district court, Mr. Molina-Chavez argued that the terms of his supervised release provided him with authority to enter the United States. R. Vol. I at 37-38. The government responded that only the Secretary of Homeland Security could grant him such authority. Mr. Molina-Chavez then retreated to a more subjective understanding of his "legal innocence" claim, stating that "a person untrained in the law" like himself would be justified in his *belief* that the district court's order gave him permission to reenter the United States to report to his probation officer. *Id.* at 48. But the district court rejected this argument, concluding that his alleged subjective understanding did not motivate his actions because it would be unreasonable to infer that he intended "to report to his probation officer in Albuquerque, New Mexico" when found in Tulsa, Oklahoma. *Id.* at 55 n.1.
    It is therefore not surprising that Mr. Molina-Chavez has returned to an argument that "it makes no difference . . . how he in fact understood the documents" or whether he believed he was guilty, because the terms of supervised release were ambiguous *as a matter of law*; that is, objectively ambiguous. Aplt. Opening Br. at 27. He appears to have abandoned his "subjective understanding" argument. In any event, he could not reasonably have believed the supervised release order permitted him to be in Tulsa, Oklahoma when and where he was found.

whether he had the Attorney General's authorization, his claim still fails under the particular facts and circumstances of this case.

The only claim he can possibly make to have legal authorization to reenter the United States based on his 2009 sentence lies with its mandate to report to a probation officer. The conditions of supervision required that he report "to the probation office in the district to which [he] is released within 72 hours of release from the custody of the Bureau of Prisons [B.O.P.]." Supp. R. at 11. But his unlawful presence in Tulsa, Oklahoma did not occur within 72 hours of his release. Nor was he released from B.O.P. custody within the Northern District of Oklahoma, where he was later found.[4]

The standard conditions of supervision also anticipated monthly reports to a probation officer within the first five days of each month. But Mr. Molina-Chavez was arrested in a different judicial district, at the end of the month. Simply put, the terms and conditions of supervised release unambiguously *did not* grant Mr. Molina-Chavez permission to be present in Tulsa, Oklahoma on October 29, 2010.[5] Instead, they prohibited him from

---

[4]    The further prohibition on *leaving* the judicial district "without the permission of the court or probation office," Supp. R. at 11, obviously offers Mr. Molina-Chavez no help. He was not found within the District of New Mexico, and he has failed to show he had any permission from the court or the probation office to leave that district to travel to Tulsa, Oklahoma, which lies outside the District of New Mexico, when he was found there.

[5]    Our conclusion on this point, which is based on the written sentencing

(continued...)

reentering the United States without authorization.  There is no evidence he had authorization to be present in Tulsa, whether under the supervised release terms, or otherwise.  He has therefore failed to make a colorable claim of legal innocence concerning the illegal reentry charge to which he previously pled guilty.

### B.  Timeliness of Motion to Withdraw

Mr. Molina-Chavez's motion to withdraw his guilty plea fails for another reason.  He claims that his counsel was unaware of the alleged ambiguity in the terms of his supervised release until his probation officer gave counsel a copy of the Order on Supervised Release on March 1, 2011.  But as the district court found:

> Defendant received discovery from the government on December 14, 2010, and the discovery included a copy of the order of supervised release order in the [2009] New Mexico case. . . . Thus, defendant

---

[5](...continued)
information contained in the record, makes it unnecessary to supplement the record with the transcript of the New Mexico District Court sentencing hearing, held September 3, 2009 in Case No. 2:09-cr-01574BB.  The government contends that the district court's comments during this sentencing hearing should have made it crystal clear to Mr. Molina-Chavez that he was not permitted to return to the United States and that if he did so, he would be immediately arrested.  Mr. Molina-Chavez objects to supplementation of the record, contending that the 2009 sentencing transcript was not part of the district court record in this case.  We need not resolve this dispute concerning supplementation of the record, for the record we have clearly supports the government's contentions, without the need to examine the oral transcript of sentencing.  The government's motion to supplement the record with the 2009 sentencing transcript is therefore DENIED.

knew or should have known of his alleged defense before he entered his guilty plea on January 7, 2011.

R. Vol. I at 55.

These findings of fact were not clearly erroneous. The district court therefore did not abuse its discretion in determining that the delay in filing his motion to withdraw weighed against granting the motion.

### C. Conclusion

The district court's order denying Mr. Molina-Chavez's motion to withdraw his guilty plea was not an abuse of discretion. We therefore affirm that order.

## II. No. 11-5057, Revocation of Supervised Release

In Case No. 11-5057, Mr. Molina-Chavez challenges the revocation of his term of supervised release and his resulting five-month sentence. As a threshold matter, the government argues that his appeal from this conviction is moot and should therefore be dismissed. It is uncontested that Mr. Molina-Chavez has completed serving his five-month sentence. The issue is "whether sufficient collateral consequences flow from the underlying judgment and the completed sentence to save the appeal from mootness." *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000).

Mr. Molina-Chavez makes a single argument concerning mootness. He contends that because the two-year term of supervised release imposed in the District of New Mexico was only partially revoked, "it could still form a basis for

another prison term in the future." Aplt. Reply Br. at 4-5. Therefore, he claims, "the issue of its ambiguity . . . is not moot." *Id.* at 5. To the extent that this argument raises a challenge to the five-month term on revocation of supervised release that he has already served (as opposed to raising a collateral attack on the 2009 supervised release terms themselves, which are not before us in this appeal), it envisages only collateral consequences flowing from the effect of the revocation order on a possible future sentence. We have made it clear, however, that such consequences do not rise to the level of collateral consequences sufficient to avoid mootness:

> [W]hen a defendant appeals the revocation of his supervised release and resulting imprisonment and has completed that term of imprisonment, the potential impact of the revocation order and sentence on possible later sentencing proceedings does not constitute a sufficient collateral consequence to defeat mootness.

*Meyers*, 200 F.3d at 722.

Like the defendant in *Meyers*, Mr. Molina-Chavez has failed to show collateral consequences sufficient to avoid mootness. His appeal in No. 11-5057 is therefore dismissed as moot.

-12-

**CONCLUSION**

In Case No. 11-5056, the judgment of the district court is AFFIRMED.

We DISMISS AS MOOT the appeal in Case No. 11-5057. The government's

motion to supplement the record with the sentencing transcript from

Mr. Molina-Chavez's 2009 New Mexico sentencing hearing is DENIED.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge